Barbara J. WIED, Intervenor-Plaintiff
Below, Appellant,

v.

VALHI, INC., Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Oct. 18, 1982.

Decided: July 29, 1983.

Irving Morris (argued) and Kevin Gross of Morris & Rosenthal, P.A., Wilmington, and Melvyn I. Weiss, New York City, David J. Yardley and Keith F. Park, of Milberg, Weiss, Bershad & Specthrie, San Diego, Cal., of counsel, for appellant.

A. Gilchrist Sparks, III of Morris, Nichols, Arsht & Tunnell, Wilmington, and Fred H. Bartlit, Jr. (argued), Jeffrey S. Davidson and Nancy E. Hollingsworth of Kirkland & Ellis, Washington, D.C., of counsel, for appellee.

Before HERRMANN, C.J., and HORSEY and MOORE, JJ.

HERRMANN, Chief Justice:

This appeal arises from the refusal by the Court of Chancery to impose a constructive trust upon profits the intervenor-plaintiff alleges were received by the plaintiff in a private settlement of representative litigation.

### I.

The plaintiff, Valhi, Inc. ("Valhi"), owned 700,000 shares, or in excess of 20%, of the stock of PSA, Inc. ("PSA"). In October, 1978, in response to a perceived threat of a takeover by Valhi, PSA directors proposed certain amendments to PSA's charter and bylaws. Valhi opposed the amendments in a proxy contest. To implement that opposition, Valhi filed this action, under Chancery Court Rules 23 and 23.1,* against PSA on

---

\*      "RULE 23. CLASS ACTIONS

"*(a) Requisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative

its own behalf and derivatively on behalf of PSA, as well as in the form of a class action on behalf of all stockholders of PSA similarly situated other than the defendant directors of PSA. The complaint sought injunctive relief against the adoption of the proposed charter and by-law amendments.

The complaint alleged that, prior to the filing of the action, Valhi had requested that the directors of PSA postpone the convening of the special meeting of the stockholders of PSA which had been scheduled to be held on November 20, 1978; that the PSA directors had refused to reconsider the proposed amendments or to postpone the November 20 stockholders' meeting; that the special meeting was being convened for the purpose of enacting anti-takeover provisions directed against Valhi. The complaint also charged that the PSA directors had devised a plan to enable them to retain their positions as directors and to assure a continuing veto power over proposed corporate acts; that the crux of the proposed amendments was to require a stockholder vote of 80% for the approval of virtually all transactions between PSA and any of its stockholders holding 20% or more of its stock unless the transaction had been previ-

ously approved by the directors. The complaint charged that the proposed amendments, to be considered at the special stockholder's meeting, included the elimination of the annual election of all members of the board of directors and the creation of a board divided into 3 classes to hold office for staggered terms of 3 years each, as well as the elimination of cumulative voting for the election of directors, the latter proposition being designed to prevent Valhi from electing its own candidate to the board of PSA. The complaint alleged that the plan devised by the PSA directors, to be voted on at the November 20 meeting, was designed to use the corporate machinery of PSA and the Delaware Corporation Law for the improper purpose of perpetuating incumbent management in office.

The prayer of the complaint was for temporary and permanent injunctive relief against the adoption of the proposed charter and by-laws amendments as being unreasonable, invalid, and contrary to the provisions of the Delaware Corporation Law.

The complaint also included a stockholders' derivative action for reimbursement of

parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

\* \* \* \* \* \*

"*(e) Dismissal or Compromise.* A class action shall not be dismissed or compromised without the approval of the Court, and notice by mail, publication or otherwise of the proposed dismissal or compromise shall be given to all members of the class in such manner as the Court directs; except that if the dismissal is to be without prejudice to the class or with prejudice to the plaintiff only, then such dismissal shall be ordered without notice thereof if there is a showing that no compensation in any form has passed directly or indirectly from any of the defendants to the plaintiff or plaintiff's attorney and that no promise to give any such compensation has been made."

\* \* \* \* \* \*

"RULE 23.1. DERIVATIVE ACTIONS BY SHAREHOLDERS

"In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having

failed to enforce a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort. *The action shall not be dismissed or compromised without the approval of the Court, and notice by mail, publication or otherwise of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the Court directs; except that if the dismissal is to be without prejudice or with prejudice to the plaintiff only, then such dismissal shall be ordered without notice thereof if there is a showing that no compensation in any form has passed directly or indirectly from any of the defendants to the plaintiff or plaintiff's attorney and that no promise to give any such compensation has been made.*" (Emphasis supplied)

**12**

corporate funds expended by PSA directors in the proxy contest.

As contrasted with the allegations thus made in the complaint, PSA's notice to its stockholders of the November 20 special meeting stated the purpose of the proposed amendments to be a proper discouragement of unilateral attempts by outsiders to gain control of PSA in a manner which might not be in the stockholders' best interests. And by the notice, the stockholders were urged to vote for the proposed amendments in their own interest in order to forestall the threatened takeover of PSA by Valhi.

Upon the basis of the foregoing, the Trial Court saw the issues at the outset of this case as follows:

"Accordingly, the issues presented at the inception of this case were (1) whether or not PSA was justified in seeking to repel the overtures being made by Valhi by means of the adoption of so-called 'porcupine' provisions proposed to be voted on at the stockholder meeting scheduled for November 20, 1978, (2) whether or not PSA might properly seek to repel the overtures made by Valhi through the purchase of the shares held by Valhi in PSA, *Kors v. Carey,* 158 A.2d 136 (1960), and *Cheff v. Mathes,* Del.Supr. 199 A.2d 548 (1964), and (3) whether or not Valhi could properly sell its PSA stock to PSA."

The Trial Court denied the relief sought by the complaint. The stockholders' special meeting was duly held and the proposed amendments were approved. Shortly thereafter, PSA and Valhi entered into negotiations for the redemption of Valhi's PSA stock.

On January 10, 1979, Valhi moved to amend its complaint to remove the individual defendants from the suit, including the derivative claim against them for reimbursement of funds spent by the directors in the proxy contest. On February 1, 1979, the Trial Court granted the motion and

Valhi filed its amended complaint. In this connection, there was no compliance with the notice-to-stockholder requirements of Rules 23 and 23.1.

On February 21, 1979, Valhi and PSA entered into an option agreement under which Valhi agreed to exchange all of its PSA stock for all of the stock of Jetair Leasing, Inc. ("Jetair"), a PSA subsidiary. Jetair's assets consisted of 4 ten-year-old Boeing aircraft. Under the redemption agreement, Valhi would lease the aircraft to PSA for 18 months for total rentals of $8,712,000. The agreement also provided:

"... Valhi and PSA shall cooperate to accomplish to the extent possible the dismissal with prejudice of [the instant] action as to the purported plaintiff class on the closing date."

Valhi announced the February 21 agreement immediately in a press release, copies of which were mailed forthwith to all PSA stockholders with a transmittal letter advising the stockholders of the terms of the redemption agreement and stating that, if the transaction were consummated, Valhi would settle all of its litigation with PSA.

On February 22, 1979, Valhi informed the Trial Court of its February 21 agreement with PSA. Valhi did not advise the Court that the agreement contemplated the dismissal with prejudice of the class action. The Court suggested that Valhi amend its complaint to omit the representative claims since the Court had not yet certified the case as a class action. Valhi submitted an amended complaint deleting the class action claims without prejudice. The Court approved the amendment on April 16, 1979. Once again, however, there was no compliance with the requirements of the Rules for notice to PSA stockholders.

In July, 1979, Barbara J. Wied, a PSA stockholder, commenced a derivative action in the U.S. District Court for the Southern District of California ("the Federal action"),** naming as defendants Valhi, the

** The action was styled *Wied v. Shimp, et al.,* Civil Action No. 79–00803–E. It was based

upon: (1) claimed violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule

chairman of the board of Valhi, and all but one of the directors of PSA. Wied sought damages and injunctive relief in connection with the redemption agreement.

On August 3, 1979, PSA exercised its option to redeem Valhi's PSA stock under the terms of the February 21 agreement, the closing date to be October 31, 1979. Wied moved in the Federal action to enjoin consummation of the agreement. The Federal Court denied the motion.

On August 31, 1979, Wied moved to intervene as plaintiff in this case for the purpose of having the amended complaints stricken for non-compliance with the notice requirements of Rules 23 and 23.1. The Trial Court granted Wied's motion and reinstated the class and derivative claims upon the basis of that non-compliance. Wied undertook to prosecute the case under the original complaint filed herein, and her counsel were designated as lead counsel with primary responsibility for prosecution of the case.

In October, 1979, Valhi moved to withdraw as party plaintiff, seeking dismissal with prejudice of its individual claims. The Court deferred ruling on the motion; instead, it enjoined the scheduled closing of the redemption transaction on October 31, and directed the parties to proceed with notice to PSA shareholders under the Rules. However, the parties could not agree as to the form of notice.

On October 30, Valhi informed PSA that, because of the Court's action, the redemption agreement must be deemed terminated. PSA demanded, however, that Valhi perform under the agreement and cross-claimed in the Federal action against Valhi for specific performance of the agreement. Valhi renewed its motion to withdraw in the case at bar. The Trial Court again denied the motion pending required notice to PSA stockholders and opportunity for hearing. Again, the parties could not agree as to the form of notice, and the Trial Court announced it would prescribe guidelines after being advised as to the outcome of the Federal action.

On February 26, 1980, Valhi and PSA consummated an amended redemption agreement, containing substantially the same terms as the February 1979 agreement, but omitting the provision relating to the dismissal of this litigation with prejudice. On the same day, PSA declared a 25% stock dividend, redistributing to its stockholders almost all of the shares redeemed from Valhi.

Wied then began negotiations with PSA for the settlement of the reinstated class and derivative claims in this case. The parties reached a settlement with Court approval. Another PSA stockholders' vote was taken on the proposed charter and by-law amendments and they were again approved. Thus, apparently, the issues raised by the original complaint were settled by negotiation between Wied and PSA, with the Trial Court's approval. No monies were recovered in the settlement, but Wied obtained counsel fees.

Thereafter, Wied orally moved in this case for the imposition of sanctions upon Valhi for breach of its fiduciary duty, as representative of PSA stockholders, in consummating the agreement with PSA without the approval of the Trial Court and without the required notice to shareholders under Rule 23.1. The sanction sought was the imposition of a constructive trust upon Valhi's profits from the redemption.

In September 1980, the Trial Court ordered briefs on the appropriateness of such sanction in the absence of "any tangible recovery" by Wied for the shareholders in its settlement of the claims on their behalf against PSA directors.

10b–5 promulgated thereunder; (2) claimed violation of Section 16(b) of the 1934 Act; (3) claimed breach of the individual defendants' fiduciary duties in that the redemption agreement allegedly constituted a waste of PSA's corporate assets; (4) alleged complicity by Valhi and the chairman of the board of Valhi in such waste; and (5) the alleged breach of Valhi's fiduciary duty to PSA stockholders in settling Valhi's claims in the instant case.

The Trial Court ordered an "ex *post facto* hearing" to be held on the overall fairness of the price paid for Valhi's PSA shares under the redemption agreement. Notice was sent to stockholders outlining the history of the case, the positions of the parties, and the nature of the proposed hearing. The notice indicated that Wied would raise the issue of Valhi's breach of fiduciary duty and its duty to account for any profit it realized from the exchange of its PSA stock for the Jetair stock and the lease-back arrangement with PSA. The notice indicated Valhi's position to be that the redemption agreement was an arms-length transaction, with terms fair to PSA and its stockholders. Valhi also pointed to the stock dividend, consisting of the redeemed stock, as a benefit to PSA and its shareholders.

The fairness hearing was held in April 1981. Upon the basis thereof, in a February 1982 unreported opinion, the Trial Court denied Wied's application for sanctions against Valhi and the constructive trust sought. In so doing, the Trial Court concluded:

(1) That this action as brought by Valhi "is clearly not a strike suit" such as Rules 23 and 23.1 are aimed to forestall.

(2) That the "entire fairness" of the redemption transaction was established by the evidence at the hearing.

(3) That "while it is clear that a fiduciary may not make a profit at the expense of those for whom he sues, *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541 [69 S.Ct. 1221, 93 L.Ed. 1528], and *Young v. Higbee Company,* 324 U.S. 204 [65 S.Ct. 594, 89 L.Ed. 890]," Valhi made no profit "to which the other stockholders of PSA are entitled on a trust theory."

(4) That "[I]t is clear from the evidence adduced * * * that the directors of PSA exercised reasonable and fair judgment and demonstrated good faith in agreeing upon the price to be paid for the PSA stock held by Valhi, there having been arms' length bargaining and careful deliberation by the board of directors of PSA, coupled with such directors' reliance on independent consultants, prior to reaching a determination as to the propriety of the transaction in issue. Furthermore, at the April 14–16, 1981 hearing, the intervenor [Wied] stipulated to the exercise of good faith on the part of the directors of PSA, *Kaplan v. Goldsant,* Del.Ch., 380 A.2d 556 (1977). And such test of fairness is to be applied when the directors' motive in approving a purchase, such as the one in issue, is to remove a substantial stockholder deemed inimical to corporate policy, *Cheff v. Mathes,* supra. Here the intervenor stipulated that the directors of PSA carefully considered the proposed redemption of the PSA stock held by Valhi, having exercised their business judgment on such proposal on four separate occasions, namely, February 1979, August 1979, October 1979, and February 1980. The intervenor has also conceded that during each one of these four periods of evaluation of the proposed redemption of its shares that the PSA directors and their consultants acted in good faith in reaching a determination that the transaction complained of was fair to the PSA stockholders. See also findings of fact and conclusions of law in related litigation between the intervenor and Valhi in the case of *Wied v. Shimp* * * * in the United District Court for the Southern District of California."

(5) That whether viewed as of the February 1980 closing date or as of a later date, the evidence adduced at the "fairness" hearing established that Valhi received no unfair profit in the consummation of the redemption agreement; that such evidence "established that the value of the PSA stock which Valhi surrendered to PSA in consummation of the redemption agreement was greater than the value of the Jetair Leasing stock which Valhi received from PSA" under that agreement.

(6) That the evidence adduced at the "fairness" hearing "established that the terms governing the acquisition of * * * PSA stock from Valhi by PSA was entirely

fair to such corporation and its stockholders."

Wied appeals.

## II.

One of the two basic grounds of this appeal is Wied's contention that the Trial Court has permitted Valhi, a "faithless fiduciary," to "depart the litigation with the profit from a private settlement Valhi negotiated and entered into while serving as the representative plaintiff."

## A.

The first keystone of the "faithless fiduciary" contention is the claim that Valhi violated a fiduciary duty by wilfully committing serious violations of Rules 23 and 23.1 in order to bargain for a private settlement.

Wied emphasizes correctly that those Rules were designed to protect against private settlements of representative litigation; that by Rule of Court and Delaware case law, a representative plaintiff is prohibited from "securing a personal profit and in the process abandoning the representative claims and other claimants." Wied argues, with feeling, that "to regard the notice provision required by Rules 23 and 23.1 as permitting a representative plaintiff to negotiate privately for a profit and retain it perverts the entire concept of notice and the conduct of representative litigation."

The difficulty with such "broad brush" approach in this case is that the general propositions relied upon are inapposite here. It is correct to say, of course, that Rules 23 and 23.1 are intended to guard against surreptitious buy-outs of representative plaintiffs, leaving other class members without recourse. See *Jaeger v. Muscat*, Del.Ch., 221 A.2d 607 (1966); *Chickering v. Giles*, Del.Ch., 270 A.2d 373 (1970). But such was not the situation or the result in this case.

Here there was no evidence of causal or other type of relationship between the asserted violation of the Rules and the proceeds of the stock redemption. Nor was there any secrecy about the redemption agreement itself. Although the amended complaints were inadvertently permitted by the Court without compliance with the notice requirements of the Rules, there was no effort by Valhi to conceal from fellow stockholders its redemption agreement with PSA. On the contrary, the press release and information letter of transmittal to PSA stockholders of February 21, 1979, made immediately upon the execution of the agreement, constituted a complete disclosure to PSA stockholders (including Wied) of Valhi's action and intentions, as did the prompt notification to the Trial Judge by counsel on the very next day.

Nor were other PSA stockholders left without recourse. Rectifying any prejudice to PSA stockholders by the non-compliance with the Rules: Wied was permitted to intervene as party plaintiff, and her counsel designated as lead counsel; the amended complaint was stricken and the original complaint reinstated; the representative claims presented by the original complaint were litigated by Wied to a negotiated settlement with PSA; and, thereafter, in response to Wied's application, an *ex post facto* Rule 23 fairness hearing was held by the Court, upon proper notice, in which the facts and circumstances of the redemption agreement were fully explored by the Trial Court. And Valhi remained in the case throughout.

The determinative considerations in this facet of the action for the imposition of sanctions and a constructive trust are these: (1) the Trial Court permitted Valhi to amend the complaint in a manner which deleted originally asserted class and derivative allegations without any prejudice to their subsequent renewal; and (2) those same claims were in fact subsequently reinstated and then settled by Wied herself on a fair and reasonable basis. As found by the Trial Court, Valhi did nothing which prejudiced the claims of other PSA stockholders.

Noteworthy in this connection is this evidence that Valhi did not intend to prejudice PSA stockholders by the manner in which it litigated this action: In the Federal action, the Court found as fact that Valhi's purpose in amending its original complaint to delete the derivative claims was to expedite this litigation—not to settle it.

These factors distinguish this case from those on which Wied relies, wherein the basis of liability was the prejudice caused to representative claims by either dismissal of the actions with prejudice or releases. Wied relies mainly upon *Young v. Higbee Co.,* 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945) and its progeny. In those cases, representative plaintiffs engaged in conduct which prejudiced the representative claims asserted. For example, in *Higbee,* the representative plaintiff received six times the value of his stock in return for dismissing the appeal of a representative claim with prejudice. In *Clarke v. Greenberg,* N.Y.Ct. App., 296 N.Y. 146, 71 N.E.2d 443 (1947), the representative plaintiff received $9,000 for stock valued at $51.88 and released the directors from the derivative claim. In *Dabney v. Levy,* S.D.N.Y., 92 F.Supp. 551, 553 (1950), *aff'd,* 2d Cir., 191 F.2d 201, *cert. denied,* 342 U.S. 887, 72 S.Ct. 177, 96 L.Ed. 665 (1951), the plaintiffs executed a release of the derivative cause of action and transferred plaintiffs' shares valued at $204.88 in return for $21,000.

■ Accordingly, we find no error in the Trial Court's rejection of the contention that Wied is entitled to the remedy sought because Valhi failed to comply with Rules 23 and 23.1. Likewise, we find no merit in the contention that the Trial Court, by its action or inaction in this case, sanctioned acts of "fiduciary faithlessness" in that connection. On the contrary, we find that the Trial Court acted with admirable speed and vigor in rectifying the non-compliance with its Rules.

\*　　\*　　\*

■ We pause to note that the Trial Court stated that, while it found no concealment from or misrepresentation before the Court, the failure of counsel and the Court to follow Rules 23 and 23.1 "could not be condoned." We agree. We hold, however, that the procedural errors here were ultimately rectified by the Trial Court, the purpose of the Rules ultimately fulfilled, and justice ultimately done in this case. To hold otherwise would be to equate non-compliance with the Rules, ultimately and timely corrected by Court and parties, with a sanctionable breach of fiduciary duty. Neither the Rules nor justice require such punitive result in this case.

This is not to say, however, that non-compliance with Rules 23 and 23.1 should be easily excused. Nor do we intend to indicate that, under other facts and circumstances, sanctions against parties or lawyers, or fatal consequences to their case, may not result from lack of candor or non-compliance with the Rules here involved. We hold only that, in the instant case, timely corrective action by Court and counsel satisfied the requirements of justice.

## B.

The second keystone of the "faithless fiduciary" contention, upon the basis of which Wied seeks the remedy of constructive trust, is the claim that Valhi departs the litigation with the profit of a private settlement. Wied relies upon an inapplicable standard of fiduciary accountability in contending that, regardless of whether PSA and its stockholders were prejudiced by the redemption, Valhi must be held accountable for any profit it derived therefrom.

■ The applicable rule here is not that a fiduciary may not profit, but that a fiduciary in Valhi's position may not profit at the expense of those for whom he sues. *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949). The question, therefore, is whether Valhi profited as a fiduciary at the expense of, or to the prejudice of, PSA and its stockholders. Indeed, that inquiry is mandated by the nature of the remedy which Wied seeks. As stated in *Adams v.*

*Jankouskas,* Del.Supr., 452 A.2d 148, 152 (1982):

> "[A constructive trust] is imposed when a defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty."

Wied cites no applicable authority to the contrary.

▪ The Trial Court's findings and conclusions as to the profit issue in this case are supported by the applicable rule of law and by the record. It cannot be said that the findings are clearly wrong and that the doing of justice requires their overturn. Accordingly, the Trial Court's findings in this regard will not be disturbed. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671 (1972).

### C.

The last keystone of Wied's "faithless fiduciary" contention is the claim that "Valhi's actions cannot be cured by an invention called an *ex post facto* fairness hearing."

▪ We dismiss this claim with the statement that the record shows that the "fairness hearing" was ordered by the Court in direct response to Wied's "last resort" contention that in the redemption Valhi received an exorbitant price for its stock. Wied cooperated, without objection, in the arranging and conduct of the hearing. Dissatisfaction now with the result of the hearing is not sufficient ground for an apparently complete shift of position as to its propriety.

### III.

The other basic ground of this appeal is Wied's contention that the "facts presented at the *ex post facto* hearing prove that Valhi's illegally obtained profit was $23,-144,506."

This ground is based upon the contention, dealt with above, that *any* profit realized by Valhi is an unfair profit to which the stockholders of PSA are entitled.' As we have held, the only profit properly at issue in this case is a profit which has been gained at the expense of the stockholders of PSA. Having concurred with the Trial Court in its conclusion that Valhi realized no profit in that category, we find no useful purpose in further pursuing the question of the amount of profit Valhi may have realized out of the redemption.

### IV.

Valhi contends that the Trial Court properly rejected Wied's application for a constructive trust on the basis of the finding that the transaction was entirely fair to PSA and its stockholders—a finding grounded upon the evidence and the application of the business judgment rule.

It appears to us that, except for relevancy, Wied has declined to join issue on the merits of that question or the evidence and rule of law applied thereto by the Trial Court. Underlying all arguments made by Wied in this connection is the renunciation, or at least the denunciation, of the *ex post facto* fairness hearing as a relevant proceeding, and an insistence throughout, as a basic premise, that *any* profit realized by Valhi *per se* rendered the entire transaction unfair.

Having ruled that position untenable under the facts and circumstances of this case, we find nothing now before us for decision as to the entire fairness of the transaction.

\* \* \*

There is no reversible error upon any ground of this appeal.

AFFIRMED.