Joseph **DE ANGELIS** and Mary Jane Regele, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**SALTON/MAXIM HOUSEWARES, INC.,** Leonard Dreimann, David C. Sabin, William B. Rue, Dean Witter Reynolds, Inc. and Mesirow Financial Inc., Defendants.

Civ. A. No. 12420.

Court of Chancery of Delaware, New Castle County.

Submitted: March 1, 1993.
Decided: April 23, 1993.

Thomas B. Hughes, and Brian P. Glancy, Schlusser Reiver Hughes & Sisk, Wilmington (Robert B. Matusoff, Gene Mesh and Associates, Cincinnati, of counsel), for plaintiffs.

Joseph A. Rosenthal, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, for objectors.

Kenneth J. Nachbar, and Robert J. Valihura, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants.

HARTNETT, Vice Chancellor.

The proposed settlement of this class action is opposed by certain shareholders of defendant Salton/Maxim Housewares, Inc. ("Salton"). The Objectors are among the named plaintiffs in a similar, earlier-filed action in Illinois.

After considering all the circumstances, the Court, in exercising its business judgment, approves the proposed settlement.

The settlement is approved because the Court finds, on balance, that the terms of the settlement are fair and reasonable and that it is in the best interests of the class to settle this litigation on the terms agreed, notwithstanding the Court's serious concerns as to the process that produced the settlement.

The Court, in its discretion, determines, however, that, under all the circumstances, plaintiffs' counsel should not receive any award of attorneys' fees.

I

This litigation arises out of the 1991 Initial Public Offering of Salton, a Delaware corporation with its principal place of business in Mount Prospect, Illinois. Salton designs and markets a broad range of small kitchen appliances and personal and beauty care appliances.

In order to pay off an outstanding term loan and the balance on its line of credit, Salton's management determined to offer 2.3 million shares of stock of the corporation to the public. Those shares were marketed pursuant to a Prospectus dated October 9, 1991 ("the Prospectus"). The Prospectus advised that Salton had achieved a 100% increase in revenues in each of its fiscal years ending June 30, 1990 and June 29, 1991. The Offering was fully subscribed on October 9, 1991 at a price of $12 per share.

On November 27, 1991, Salton announced that its revenues for the quarter ending December 31, 1991 would likely be substantially unchanged from the results for the same quarter during the prior year. Following that announcement, the price of Salton's shares fell from the prior day's closing price of $9 per share to $6 per share.

Two days after this announcement, on November 29, 1991, the first of seven class action suits alleging violations of the federal securities laws were brought in the United States District Court for the Northern District of Illinois. These actions are presently active and were consolidated on April 27, 1992 under the caption *In re Salton/Maxim Securities,* 91–C–7963 ("the Illinois Action").

The complaint in the Illinois Action alleges that defendants failed to disclose material facts in the Prospectus. The allegations focus on two alleged disclosure failures.

The first is based upon Salton's failure to disclose a decline in its backlog of unfilled orders. The Prospectus stated that Salton's backlog amounted to approximately $47 million as of June 30, 1991. The Prospectus failed to disclose that Salton's backlog allegedly had decreased to $24 million by October 9, 1991, the date the Prospectus was issued.

The second alleged disclosure violation is that Salton failed to disclose that its financial resources were insufficient to develop products and to maintain adequate inventories for the forthcoming Christmas 1991 selling season.

Defendants, as will be discussed, deny that any disclosure violations occurred.

The Objectors to the proposed settlement in this Court, who are among the plaintiffs in the Illinois action, allege that the plaintiffs in the Illinois Action began preliminary settlement discussions which quickly reached an impasse when defendants' offer of $1.2 million in settlement was rejected. (Although defendants concede that an offer of settlement was made, they claim it did not exceed $1 million.) The Objectors claim that the impasse led to the filing of this suit.

On January 6, 1992, Joseph De Angelis, who originally was the sole named plaintiff in this subsequently filed Delaware action, brought a purported class action suit against defendants in the United States District Court for the Eastern District of Pennsylvania. Objectors allege that De Angelis' counsel attempted to voluntarily dismiss that suit without court approval, in violation of *Fed. R.Civ.P.* 23(e), when he learned of the earlier-filed Illinois Action because he realized that his suit would likely be transferred to Illinois by the federal Judicial Panel for Multi-district Litigation. Court approval for the voluntary dismissal of the Pennsylvania action was not obtained until February 4, 1993. At oral argument at the Settlement Hearing in this Court, De Angelis' counsel admitted he did not want to be part of the Illinois litigation.

On January 28, 1992, the suit presently before this Court was brought by Mr. De Angelis. The Objectors point out that both De Angelis and his counsel testified at their depositions that De Angelis was not consulted in connection with the decision to withdraw the Pennsylvania action and to bring the Delaware action.

The allegations contained in De Angelis' Delaware suit are substantially covered by the Illinois action, although in the initial Delaware complaint, De Angelis alleged only state law fraud claims. The Delaware complaint also stated that De Angelis bought his stock in the Initial Public Offering and held it through the end of the class period. After Objectors took the deposition of De Angelis, in connection with their objections to this Settlement, it was learned that this allegation was false and that De Angelis had, in fact, sold his shares for $10.75 per share on October 23, 1991—well before the November 27th announcement. After the Stipulation of Settlement in this case was signed on September 4, 1992 and notice given to the purported class members, De Angelis' complaint was amended to add Mary Jane Regele as a plaintiff and to add federal securities law claims. The complaint was able to be amended without leave of the Court, pursuant to Chancery Rule 15(a), because, unlike the vigorously contested Illinois Action in which defendants filed a motion to dismiss, defendants have never filed a responsive pleading in this action.

It is not disputed that De Angelis' counsel began settlement negotiations within two weeks of the filing of the Delaware suit. De Angelis' counsel never made any formal document discovery demands and never took any sworn depositions but instead conducted informal, unsworn "interviews" with Salton personnel. An interview with the representative of the underwriter with primary responsibility for the offering was not conducted until after the formal Stipulation of Settlement was signed in September 1992.

At oral argument on March 1, 1993, De Angelis' counsel revealed that an agreement in principle had been reached with Salton on May 11, 1992 to settle the case for $1,290,000. After Salton's insurer objected to this Settlement, De Angelis' counsel readily agreed to reduce the amount of the settlement to $1,225,000.

De Angelis' counsel entered into the settlement agreement in principle without consulting with a damages expert. Indeed, it was not until over three months after the Memorandum of Understanding of Settlement was signed that De Angelis' counsel obtained the opinion of a damages expert that the proposed settlement was fair.

On May 5, 1992, certain of the plaintiffs in the Illinois Action filed three suits in this Court: *Jeffrey Prezant v. Leonhard Dreimann, et al.,* Del.Ch., C.A. No. 12,554–NC; *David and Chaile Steinberg v. Leonhard Dreimann, et al.,* Del.Ch., C.A. No. 12,555–NC; and *Toni Fenchel v. Leonhard Dreimann, et al.,* Del.Ch., C.A. No. 12,556–NC. The plaintiffs in these suits immediately moved to consolidate their Delaware actions with the earlier-filed *De Angelis* Delaware action and sought to have their attorneys designated as the lead counsel for all the suits, including the De Angelis suit. This maneuver was patently intended to block any settlement negotiations between De Angelis and the defendants so that defendants would be compelled to negotiate with plaintiffs in the Illinois Action. This Court, while consolidating the cases for trial, refused to order that the cases be merged or to designate counsel in the newly filed Delaware actions as lead counsel for the consolidated cases. *De Angelis v. Salton/Maxim Housewares, Inc.,* Del.Ch., C.A. Nos. 12,420, 12,554, 12,555 & 12,556, Hartnett, V.C., 1992 WL 161799 (Jun. 29, 1992).

On September 4, 1992, De Angelis and defendants entered into a formal Stipulation of Settlement in this case. Under the terms of this proposed settlement, Salton will pay $1,225,000 into a settlement fund for the benefit of the class of shareholders who bought Salton's stock in the Initial Public Offering or on the market between October 9, 1991 and November 27, 1991. The settlement is a so-called "global settlement" with an "opt-out" provision; that is, it purports to bar not just the claims asserted by De Angelis in this suit but also all other claims, including those asserted in the other Delaware

actions and in the Illinois Federal Action unless a class member opts out of the settlement. Defendants have also agreed not to oppose an application by De Angelis for up to 25% of the settlement fund for attorneys' fees and expenses.

Four of the plaintiffs in the Illinois Action—two of whom are also plaintiffs in Delaware actions—have objected to the proposed settlement and application for attorneys' fees. The Objectors argue that the settlement is grossly unfair to the class. They also argue that the process by which the settlement was reached was fatally tainted and that if this Court approves the settlement, it will encourage plaintiffs' attorneys to file actions in courts other than the one in which the initial action was filed in an effort to engage in impermissible forum shopping in order to negotiate a "low-ball" settlement and obtain a quick fee.

## II

■ Delaware law as to the settlement of class action suits is well-settled. In class action suits, as in other litigation, courts strongly favor the voluntary settlement of suits. *Neponsit Investment Co. v. Abramson,* Del.Supr., 405 A.2d 97 (1979). Chancery Rule 23(e) requires that this Court review proposed settlements of class action suits in order "to guard against surreptitious buy-outs of representative plaintiffs, leaving other class members without recourse." *Wied v. Valhi, Inc.,* Del.Supr., 466 A.2d 9, 15 (1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984).

■ In reviewing a proposed class action settlement, this Court "must apply its own business judgment in deciding whether the settlement is reasonable ...". *Polk v. Good,* Del.Supr., 507 A.2d 531, 535 (1986). Not only must the terms of the settlement be carefully examined, but this Court must also scrutinize the process by which the settlement is procured. *See Kahn v. Occidental Petroleum Corp.,* Del.Ch., C.A. No. 10808, Hartnett, V.C. (Jul. 19, 1989), slip op. at 8–11, 1989 WL 79967 (proposed settlement scrutinized for fairness to stockholders and counsel). A settlement will be examined with heightened scrutiny and an enhanced standard of review will be applied if the settlement process appears likely to be unfair. *Id.,* slip op. at 11, 1989 WL 79967.

Several aspects of the settlement process in this action are disturbing and, as a result, the terms of the settlement, as the end-product of that process, must be given the closest scrutiny.

■ First, De Angelis has not asserted any valid reason why this Delaware action was brought when the Illinois action, covering the same factual allegations, had been pending for two months. The courts of this State, in the interests of comity and judicial economy, will stay after-filed suits when previously-filed suits stating similar claims are pending in another court. *Local Union 199, Laborers' International Union of North America v. Plant,* Del.Supr., 297 A.2d 37 (1972). This is particularly so when the primary claims, as here, are based on federal laws and a federal suit is already pending. That being the case, De Angelis could not realistically have hoped to try this Delaware case but could have only hoped to settle it. Accordingly, De Angelis' bargaining position with defendants was necessarily significantly less than the bargaining position of the plaintiffs in the already pending federal suits.

Indeed, it is highly suspicious that defendants not only did not seek a stay of this action, but they did not move to have the complaint dismissed or move to have class certification denied as they did in the Illinois Action. De Angelis' initial complaint was particularly vulnerable to a motion to dismiss because the only claims asserted in it, state common law fraud claims, are not maintainable as claims in a class action in this Court. *Gaffin v. Teledyne, Inc.,* Del.Supr., 611 A.2d 467 (1992).

While there is no direct evidence that either defendants or De Angelis acted in bad faith, the contrast between defendants' lack of defense to the De Angelis litigation in this Court and their defense in the Illinois Action gives the unfortunate impression that defendants preferred De Angelis as a foe. De Angelis' counsel, in readily acceding to the reduction of an agreed settlement sum and in

not insisting that defendants testify under oath, did little to dispel that impression.

Because of these deficiencies in the settlement process and the existence of the undesirable forum shopping, the proposed settlement must receive heightened scrutiny. Nevertheless, from an objective review of the settlement, it is apparent that it is in best interests of the class members.

### III

The factors to be considered in determining whether a settlement should be approved include:

(1) the probable validity of the claims, (2) the apparent difficulties in enforcing the claims through the courts, (3) the collectability of any judgment recovered, (4) the delay, expense and trouble of litigation, (5) the amount of the compromise as compared with the amount and collectability of a judgment, and (6) the views of the parties involved, pro and con. *Polk v. Good,* Del.Supr., 507 A.2d 531, 536 (1986) (citations omitted).

■ In determining whether a settlement should be approved, a court should not try the merits of the underlying claims but, after considering the above factors, it must apply its own business judgment to determine if the settlement is intrinsically fair. *Id.*

■ While it is always difficult to judge the merits of a case on a limited record, from the present record it seems likely that plaintiffs would have considerable difficulty proving either liability or damages. The effect of the failure to disclose the decline in backlog orders is somewhat offset by the defendants' claim (if true) that the failure was not material because the existence of backlog orders is not a fact that is relied upon in the industry as an indicator of future sales. Defendants also assert that the decline in backlog between June 1991 and September 1991 was part of a normal seasonal cycle and the cause of the unusual decline in sales was an unexpected failure of Salton's customers to reorder Salton's goods after the initial public offering had already taken place.

Defendants also assert that there was no failure to properly disclose that a lack of adequate financing might prevent the company from maintaining adequate inventories because only $1.8 million of the actual cancellations were caused by lack of financing and that the Prospectus disclosed that up to $4.7 million in cancellations could be caused by a lack of financing.

Particularly significant is that in order to justify the award of the $6.9 million in damages claimed by the Objectors' damage expert, plaintiffs would have to prove that the entire $3 per share decline in Salton's share price that was experienced after the November 27, 1991 announcement was caused by the alleged failures to disclose rather than by other factors.

This is not to say that it would be impossible for plaintiffs to establish both liability and damages. However, at best, it will require time-consuming and expensive litigation with a minimal possibility of ultimate success.

Even if the plaintiffs, sometime in the future, can obtain a judgment against Salton greater than the substantial cash recovery being offered here, there is a real danger that it would not be collectible. Defendants assert that Salton's insurer has denied coverage as to the claims and the underwriter defendants have asserted due diligence defenses. Defendants also allege that Salton is a small company with only 70 employees which, before the Initial Public Offering, had a negative net worth and which has lost money in five of the last six years. Protracted litigation in which top management would be intimately involved would undoubtedly consume some of those limited resources and might impair Salton's ability to survive, let alone pay any damage award.

Some weight must also be given to the fact that relatively few shareholders have objected to the settlement or opted-out of it. The notice of the proposed settlement that was sent out to the class included a statement prepared by the Objectors that fully outlined their reasons for opposing the settlement. Yet only eight shareholders holding 6,400 shares (out of the 2.3 million shares sold at the Initial Public Offering) chose to opt-out.

Furthermore, the availability of the right to opt-out protects the ability of class members who find the proposed settlement inadequate to continue the action in Illinois—how-

ever uneconomically feasible that might be. *In re MCA, Inc. Shareholders Litigation*, Del.Ch., C.A. No. 11,740 (Consolidated), Hartnett, V.C. (Feb. 12, 1993), slip op. at 11, 1993 WL 43024.

After weighing all the circumstances, the Court concludes, in its business judgment, that the interests of the class would best be served by approval of the proposed settlement.

## IV

Defendants have agreed not to oppose an application for up to 25% of the settlement fund for an award of attorneys' fees and costs.

■ The general rule governing attorneys' fees is that a litigant must, himself, defray the cost of being represented by counsel. *Chrysler Corp. v. Dann*, Del.Supr., 223 A.2d 384, 386 (1966). There is a recognized exception to this rule, however, when a suit produces a common fund for the benefit of a class, the costs of producing that benefit may be deducted from the benefit. *Tandycrafts, Inc. v. Initio Partners*, Del.Supr., 562 A.2d 1162 (1989); *Maurer v. International Re-Insurance Corp.*, Del.Supr., 95 A.2d 827, 830 (1953).

■ The threshold question for determining eligibility for an award of attorneys' fees in a class action that has been settled or mooted is that the suit must have been meritorious when filed. *Allied Artists Pictures Corp. v. Baron*, Del.Supr., 413 A.2d 876, 879 (1980). The Delaware Supreme Court has expressly rejected the notion that if a defendant took a suit seriously enough to want to settle, it should not matter whether the suit had legal merit when brought. *Id.*

■ A claim is meritorious when filed "if it can withstand a motion to dismiss on the pleadings if, at the same time, the plaintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success." *Chrysler*, 223 A.2d at 387.

De Angelis' application for attorneys' fees must be denied for several reasons. The first is that his complaint was not meritorious when filed. De Angelis' class action complaint, when filed, alleged only state common law fraud claims. The Delaware Supreme Court has recently held that when common law fraud claims are the sole claims alleged in a suit, they may not be maintained as a class action because individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact. *Gaffin v. Teledyne, Inc.*, Del.Supr., 611 A.2d 467, 474 (1992). Therefore, De Angelis could not have properly maintained his suit as a class action in this Court and could only have brought it as an individual action.

Contrary to the representations in the complaint, De Angelis sold his shares before the announcement of November 27, 1991. According to De Angelis' own damages expert (and De Angelis himself at his deposition), De Angelis therefore could not have been damaged by the alleged disclosure failures. De Angelis could not have possessed knowledge of provable facts that held out some reasonable probability of success for his individual claim. Accordingly, his complaint was not meritorious when filed and therefore he is not entitled to attorneys' fees.

Furthermore, even if De Angelis' complaint had been meritorious when filed, equitable considerations weigh against this Court awarding De Angelis attorney fees.

An allowance of counsel fees in equity is "based on the historic power of the Court of Chancery to do equity in particular situations." *Tandycrafts, Inc. v. Initio Partners*, Del.Supr., 562 A.2d 1162, 1166 (1989). It is a fundamental maxim of equity that "he who seeks equity must do equity." Because of several instances where this high standard was ignored during the course of this litigation, this Court should not award any attorneys' fees in this litigation.

In the complaint, it was represented to this Court that De Angelis had held his Salton shares through the end of the class period when, in fact, he had sold his shares shortly after purchasing them. De Angelis persisted in this misrepresentation until the true state of affairs was uncovered by discovery undertaken by the Objectors after De Angelis had obtained certification as class representative (for settlement only) based, in part, on the representations in his complaint.

Objectors allege, and De Angelis' does not dispute, that De Angelis' counsel "dismissed"

his purported class action suit in Pennsylvania federal court in violation of *Fed.R.Civ.P.* 23(e)'s requirement that leave of court must be obtained to dismiss a class action suit. Leave of that court was not obtained until almost a year after the dismissal. It appears likely that De Angelis' counsel sought that dismissal because he knew that his suit would be transferred to Illinois by the Federal Judicial Panel for Multi-district Litigation. Indeed, at oral argument, De Angelis' counsel admitted that he sought the dismissal in part because he did not want to be part of the Illinois litigation.

■ The requirement that leave of court be obtained to dismiss a class action suit is not a mere technicality. It serves an important function in ensuring that class representatives are faithful in carrying out the fiduciary duties which they owe to class members. *See Wied v. Valhi, Inc.*, Del.Supr., 466 A.2d 9 (1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984).

As indicated, it seems likely that the Pennsylvania Federal suit was "dismissed" to prevent it from being transferred to Illinois by the Federal Judicial Panel for Multi-district Litigation. The role of that panel is to unite suits filed in federal courts in a single forum so as to avoid duplicative litigation in multiple fora which wastes the limited resources of the judicial system as well as those of the litigants.

Because De Angelis' counsel "dismissed" that suit and brought suit in this Court, two courts, in addition to the Illinois federal court, have been required to use their sparse judicial resources in considering litigation arising out of the same conduct—the precise evil that the Federal Judicial Panel for Multi-district Litigation was intended to remedy.

Unnecessary parallel litigation is wasteful of judicial and litigant resources. *Maldonado v. Flynn*, Del.Ch., 417 A.2d 378 (1980). It also raises the specter that a defendant will negotiate a "low-ball" settlement with an unscrupulous or lax plaintiff in one forum to circumvent a vigorously pursued case in another forum. *See* John C. Coffee, Jr., "Suspect Settlements In Securities Litigation" *N.Y.L.J.*, March 28, 1991, p. 5. While there is no direct evidence that such conduct occurred here, this Court cannot look favorably upon litigants who unnecessarily create such risks.

This Court, therefore, in its discretion, declines to award any attorney fees to the plaintiffs or their counsel to be paid out of the fund created by the Settlement. The plaintiffs, however, may be entitled to receive out of the Settlement sums the actual out-of-pocket costs upon proving those amounts.

V

The defendants shall submit an amended proposed order.