**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR SUSSEX COUNTY**

| | | |
|---|---|---|
| YAVAR RZAYEV, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. S14L-12-035 MJB |
| | ) | |
| MARVIN B. ROFFMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**Submitted:** May 20, 2015
**Decided:** August 31, 2015

*Upon Defendant's Motion to Dismiss Counts V and VI of the Counterclaim,* **DENIED**.

**OPINION**

Eric J. Monzo, Esq., Morris James LLP, 500 Delaware Avenue, Suite 1500, P.O. Box 2306, Wilmington, Delaware, 19899, *Attorney for Plaintiff*.

Richard E. Berl, Jr., Berl & Feinberg, LLP, Dartmouth Business Center—Suite 3, 34382 Carpenter's Way, Lewes, Delaware 19958, *Attorney for Defendant*.

**BRADY, J.**

1

## I. INTRODUCTION

This is a breach of contract case in which a contractor is seeking a mechanic's lien against real property, alleging the owner failed to pay for renovations to the home. Plaintiff is Yavar Rzayev, LLC, dba The Great House ("Plaintiff," "Plaintiff LLC"). The owner and sole member of Plaintiff is Yavar Rzayev ("Mr. Rzayev"). Defendant is Marvin B. Roffman ("Defendant"), who is the owner of the residential real property in question, which is located at 37240 Rehoboth Beach Avenue Extended, Rehoboth Beach, Delaware 19971 (the "Property").

Plaintiff contracted with Defendant to build an addition to Defendant's house. It is undisputed that, when construction was still ongoing, Defendant terminated Plaintiff.[1] Plaintiff alleges that Defendant is liable in the amount of $139,773.95, which includes costs for materials, labor, and interest charges.[2] Defendant has counterclaimed against Plaintiff, alleging breach of contract, breach of the implied warranty of good quality and workmanlike construction, and fraud.[3] Defendant alleges fraud against Plaintiff LLC (Count V) and against Mr. Rzayev personally (Count VI).[4] This matter was referred to this Court on May 20, 2015.[5] Currently before the Court is Plaintiff's motion to dismiss Counts V and VI.[6] For the reasons detailed below, Plaintiff's motion is **DENIED**.

---

[1] Answer and Counterclaim, Item 5, at *7.
[2] Complaint, Item 1, at 2.
[3] Answer and Counterclaim, Item 5, at *8-12.
[4] Answer and Counterclaim, Item 5, at *11-12.
[5] Letter Assigning Matter to Judge Brady, Item 15.
[6] Motion to Dismiss, Item 7.

2

## II. DEFENDANT'S COUNTERCLAIMS FOR FRAUD

In Count V, Defendant alleges fraud against Plaintiff LLC. Defendant alleges that Mr. Rzayev, acting on behalf of Plaintiff, represented that he would "personally oversee all aspects of construction in order to produce a quality product."[7] However, Defendant alleges that Mr. Rzayev knew that he had multiple jobs in progress at the time the representation was made, and the Mr. Rzayev knew or should have known that he could not oversee all aspects of construction.

Defendant says that Mr. Rzayev made a false representation on behalf of Plaintiff, the representation was intended to induce Defendant to execute a contract that "included an exorbitant and confusing management fee[,] which was effectively 50% of the cost of time and materials."[8] Defendant says that he "relied upon those representations, executed the contract, and allowed construction to proceed until it became apparent that much of the work being done was defective and in some cases so completely useless that it had to be redone, that the project was grossly over budget, and that [Defendant] was being improperly billed."[9] Defendant alleges that he "was damaged as a result of Plaintiff's false representation."[10]

In Count VI, Defendant alleges fraud against Mr. Rzayev personally. Defendant says that Mr. Rzayev is personally liable because he, "as principal of Plaintiff, LLC, directed, ratified, approved, and consented to the fraudulent representations in Count V."[11] Defendant maintains that "the personal participation of Rzayev allows for the imposition of personal

---

[7] Answer and Counterclaim, Item 5, at *11.
[8] Answer and Counterclaim, Item 5, at *11.
[9] Answer and Counterclaim, Item 5, at *11.
[10] Answer and Counterclaim, Item 5, at *11.
[11] Answer and Counterclaim, Item 5, at *12.

3

liability."[12]   In addition to ordinary damages, Defendant asks for costs, legal fees, and punitive damages.[13]

### III. PLAINTIFF'S MOTION TO DISMISS FRAUD COUNTERCLAIMS

### A. Motion to Dismiss Count V

Plaintiff argues that the fraud counterclaim against Plaintiff LLC should be dismissed because (a) Defendant has failed to meet the heightened pleading standard for fraud under Rule 9, and (b) the claim does not survive Rule 12(b) because Defendant has not pled the elements of common law fraud.

Specifically, Plaintiff says that Defendant does not identify any particular representations or omissions made by Plaintiff during the negotiation of the contract that were false or made with reckless indifference to the truth.[14]   Plaintiff further argues that even if a false representation were alleged, Defendant did not allege the time or place where the representation was made.[15]   Plaintiff cites *Nutt v. A.C. & S., Inc.*, 466 A.2d 18, 23 (Del. Super. Ct. 1983).

Plaintiff argues that Count V also fails under Rule 12(b)(6) because Defendant has failed to state a claim for common law fraud.[16]   Plaintiff cites *Dreisbach v. Walton*, 2014 WL 4352100, *4 (Del. Super. Ct., Aug. 29, 2014), for the five elements of common law fraud that the claimant must prove: (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the

---

[12] Answer and Counterclaim, Item 5at *12.
[13] Answer and Counterclaim, Item 5, at *12.
[14] Motion to Dismiss, Item 7, at 2.
[15] Motion to Dismiss, Item 7, at 2.
[16] Motion to Dismiss, Item 7, at 3.

defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.[17] Plaintiff says that Defendant's counterclaim "fails to allege a single false representation or omission by [Plaintiff]."[18]

Plaintiff also says that "the agreement was reducing to writing[,] and Mr. Roffman alleges non-performance as a reason for his failure to pay for work performed."[19] Plaintiff does not clearly explain the applicability of this statement, but the implied argument appears to be that even if there were fraud concerns, they would not excuse Defendant from paying for work that was performed.

**B. Motion to Dismiss Count VI**

Plaintiff argues that there is no personal liability for Mr. Rzayez[20] and contends that individuals are not liable for their corporation's actions merely by virtue of their corporate positions.[21] Plaintiff cites *Gassis v. Corkery*, 2014 WL 3565418, *5 (Del. Ch. July 21, 2014). Plaintiff further argues that Defendant's request for punitive damages is improper.[22] Citing *Jardel Co. v. Hughes*, 523 A.3d 518 (Del. 1987), Plaintiff argues that an award of punitive damages "is a showing of outrageous conduct with an evil motive or reckless indifference to the rights of others."[23] Plaintiff argues that Defendant has not alleged these characteristics in the instant case.[24]

---

[17] Motion to Dismiss, Item 7, at 3.
[18] Motion to Dismiss, Item 7, at 3.
[19] Motion to Dismiss, Item 7, at 3.
[20] Motion to Dismiss, Item 7, at 3.
[21] Motion to Dismiss, Item 7, at 3-4.
[22] Motion to Dismiss, Item 7, at 4.
[23] Motion to Dismiss, Item 7, at 4.
[24] Motion to Dismiss, Item 7, at 4.

## IV. DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS

First, Defendant argues that the failure to specifically plead "time or place" of the fraudulent statements is not fatal to a fraud claim.[25] Defendant cites *Tek Stainless Piping Products v. Smith*, 2013 WL 5755468 (Del. Super. Ct. Oct. 13, 2014), and argues that it is sufficient that the allegations "state a sequence of events that places the misrepresentation in context[,] and contains adequate detail of the affirmative representation that is the basis of the fraud complaint."[26] Defendant argues that, "[a]lthough no specific dates are listed, the counterclaim identifies the parties to the conversations and sets out the context of the discussions with sufficient particularity to place plaintiff on notice of the misconduct [that] is charged."[27]

*Tek* relies on a 3rd Circuit case, *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3rd Cir. 1984), which interprets nearly identical language in Rule 9(b) of the Federal Rules.[28] The *Seville* court recognized that current rules of civil procedure were designed to "eliminate the vagaries of technical pleading that once plagued complainants, and to replace them with the considerably more liberal requirements of so-called 'notice' pleading."[29] The court reasoned that while allegations of "date, place[,] or time" fulfill the function of particularly identifying the alleged fraudulent activity, "nothing in the Rule requires them," and complainants "are free to use alternative means of injecting

---

[25] Response, Item 11, at *1.
[26] Response, Item 11, at *2.
[27] Response, Item 11, at *2.
[28] Response, Item 11, at *2. Federal Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Delaware Rule 9(b) provides, "In all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity. Malice, intent, knowledge and other condition[s] of mind of a person may be averred generally."
[29] Response, Item 11, at *2 (*quoting Seville Industrial Machinery*, 742 F.2d at 790).

6

precision and some measure of substantiation into their allegations of fraud."[30] The *Seville* rule has been widely accepted by Delaware courts.[31]

Defendant maintains that his allegation of fraud against Plaintiff is "not complex" and is sufficient to place Plaintiff on notice.[32] Defendant also says that his counterclaim specifically alleges the five elements of fraud that Plaintiff references in the instant Motion to Dismiss: (1) a false representation (¶ 31); (2) which Plaintiff knew or should have known was false (¶ 32); (3) that Plaintiff intended to induce Defendant to act (¶ 33); (4) that Defendant relied on the representation (¶ 34); and (5) that damages resulted (¶ 35).[33]

Concerning Plaintiff's argument that Mr. Rzayez cannot be personally liable for fraud, Defendant argues that this is incorrect. Defendant cites the "personal participation doctrine," under which, Defendant argues, "[c]orporate officers, charged with affirmative official responsibility in the management and control of the corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or approval."[34] Defendant cites *T.V. Spano Building Corp., v. DNREC*, 628 A.2d 53, 61 (Del. Super. Ct. 1993); *Heronemus v. Ulrick*, 1997 WL 524127 (Del. Super. Ct. July 9, 1997); *2 Restatement of Agency 2d* §§343-44; and *Brasby v. Morris*, 2007 WL 949485 (Del. Super. Ct. Mar. 29, 2007).[35] Defendant cites *Brasby* as making clear that whether such personal liability exists is a question of fact to be developed.[36] If there is a conceivable set of facts that might

---

[30] Response, Item 11, at *2 (*quoting Seville Industrial Machinery*, 742 F.2d at 791).
[31] *See, e.g., Gregg v. Rowles*, 1992 WL 364759, *2 (Del. Ch, Dec. 2, 1992); *RHA Construction v. Scott Engineering*, 2011 WL 3908765, *5, n.49 (Del. Super. Ct. Sept. 1, 2011); *Sammons v. Hartford Underwriters Insurance*, 2010 WL 1267222, *2, *4-6 (Del. Super. Ct. Apr. 1, 2010).
[32] Response, Item 11, at *3.
[33] Response, Item 11, at *3.
[34] Response, Item 11, at *3.
[35] Response, Item 11, at *3.
[36] Response, Item 11, at *4 (*citing Brasby*, 2007 WL 949485, at *8).

be proven in support of the claim, then Rule 12(b)(6) dismissal is inappropriate.[37]  Finally, Defendant says that punitive damages are appropriate for a fraud claim.[38]

## V. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) will be granted only when the court determines "with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the [complainant] would not be entitled to relief."[39]  For the purpose of deciding the motion to dismiss, the court "accepts as true all well-pleaded allegations in the complaint[] and must view all inferences drawn from the facts plead [*sic*] in the light most favorable to the [complainant]."[40]  "Delaware is a notice pleading jurisdiction and the complaint need only give general notice as to the nature of the claim asserted against the defendant in order to avoid dismissal for failure to state a claim."[41]

## VI. FRAUD AND THE PERSONAL PARTICIPATION DOCTRINE

The following elements must be pled to state a claim for fraud: (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.[42]

---

[37] Response, Item 11, at *4.
[38] Response, Item 11, at *4.
[39] *Clinton v. Enter. Rent–A–Car*, 977 A.2d 892, 895 (Del. 2009).
[40] *Savor, Inc. v. FMR Corp.*, 2001 WL 541484, *2 (Del. Super. Ct. 2001) *aff'd*, 812 A.2d 894 (Del. 2002).
[41] *Universal Capital Mgmt. v. Micco World*, 2012 WL 1413598, *2 (Del. Super. Ct. Feb. 1, 2012).
[42] *Id.*

Under Rule 9, "the circumstances constituting fraud, negligence[]or mistake shall be stated with particularity."[43]  Generally, Rule 9 is interpreted to require that the complaint "must state the time, place, and contents if the alleged fraud, as well as the individual accused of committing the fraud."[44]  However, Delaware courts have adopted the reasoning of the Third Circuit in *Seville* and consistently found that the date, place, and time allegations are not required so long as the pleadings put defendants on notice of the misconduct with which they are charged and protect defendants against false charges of immoral or fraudulent behavior.[45]  A claim of fraud, if established, may give rise to punitive damages.[46]

The personal participation doctrine holds that a corporate officer can be held liable for his own wrongful acts.[47]  Liability attaches for torts that corporate officers "commit, participate in, or inspire, even though the acts are performed in the name of the corporation."[48]  Courts have further clarified that individual liability attaches only where the officer "directed, ordered, ratified, approved, or consented to" the wrongful act,[49] and that liability is only for "misfeasance or active negligence" in the commission of the tort as opposed to "nonfeasance or the omission of an act which a person ought to do."[50]

---

[43] Super. Ct. Civ. R. 9(b).
[44] *Universal Capital Mgmt.,* 2012 WL 1413598 at *2.
[45] *Sammons v. Hartford Underwriters Insurance*, 2010 WL 1267222, *4-5 (Del. Super. Ct. Apr. 1, 2010) (*citing Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3rd Cir. 1984)).
[46] *Nutt v. A. C. & S.,* 466 A.2d 16, 23 (Del. Super. Ct. 1983).
[47] *Brasby v. Morris*, 2007 WL 949485, *8 (Del. Super. Ct. Mar. 29, 2007).
[48] *Heronemus v. Ulrick*, 1997 WL 524127, *1 (Del. Super. Ct. July 9, 1997).
[49] *Brasby*, 2007 WL 949485 at *8.
[50] *Heronemus*, 1997 WL 524127 at *2.

## VII. Discussion

## A. Count V

Claims for fraud are routinely upheld by Delaware courts even when there are defects in the particularity of the pleadings. In *Sammons v. Hartford Underwriters*, the court denied the defendant's motion to dismiss a claim for fraud.[51] The plaintiffs were named insureds under a Hartford automobile policy, who tendered claims for personal injury protection ("PIP") benefits.[52] When the insurer allegedly failed to pay in accordance with the policy, the plaintiffs filed suit alleging consumer fraud.[53] The plaintiffs alleged, in relevant part, that "the Hartford automobile insurance contracts at issue… contain an implied promise that covered claims for PIP benefits under 21 *Del C.* §2118 will be paid by Hartford within thirty days of receipt of the claim" and that "Hartford's promise to pay covered claims for PIP benefits within thirty days of receipt of the claim… was made in connection with[,] and at the time of the sale of[,] each such contract."[54]

The insurer moved to dismiss, arguing that the fraud complaint did not meet the Rule 9 particularity standard, which the insurer argued required a statement of the time, place, and contents of the false representations, as well as the identity of the person making the representations.[55] Citing *Seville*, the court found that more specific details regarding time, place, and contents were unnecessary; and that the complaint was adequate because it provided detail sufficient to "place [the defendant] on notice of the precise misconduct with

---

[51] *Sammons*, 2010 WL 1267222.
[52] *Id.* at *1
[53] *Id.*
[54] *Id.* at *2.
[55] *Id.*

10

which [the defendant is] charged" and to adequately protect the defendant "against intentionally false charges." [56]

In *Universal Capital*, the court denied the defendants' motion to dismiss the plaintiff's claim for fraud even though the court found it to be a "close call".[57] The parties had contracted for plaintiff to provide investors for the initial public offering of defendants' company in exchange for warrants to purchase stock in the new public company. The defendants terminated the contract, and plaintiff filed suit alleging breach of contract, fraud, and various other claims. Many of the plaintiff's claims related to a private offering memorandum ("POM"), which defendants provided to plaintiff to use in soliciting investors.[58] The plaintiff used the POM in soliciting investors, but later allegedly learned that the POM contained "numerous material misrepresentations and omissions."[59] The plaintiff alleged fraud for misrepresentations in the POM document.[60] The defendants argued that the plaintiff's fraud claim should be dismissed because the plaintiff's complaint "simply refers to the POM and attributes misrepresentations to Defendant in a general way that is insufficent to withstand dismissal."[61]

The court denied the defendants' motion to dismiss even though the court found the fraud pleading to be "thinly pled" in that plaintiffs provided only "scant detail" regarding the specific allegedly false representations and only generally described the declarant as affiliated

---

[56] *Id*. at \*6 (*citing Seville Industrial Machinery Corp. v. Southmost Machinery Corp*., 742 F.2d 786 (3rd Cir. 1984)).
[57] *Universal Capital Mgmt.,* 2012 WL 1413598.
[58] *Id*. at \*1.
[59] *Id.*
[60] *Id*. at \*3.
[61] *Id.*

with defendants' company.[62]  The court held that while this case was a "close call," the court should allow the claim to proceed to allow for further development of the record.  The court reasoned that "[f]urther factual development through discovery will aid in determining whether the fraud claim stands."[63]

Defendant's position in the instant case is far stronger than that of the plaintiff in *Universal Capital*.  It is undisputed that Defendant has alleged all of the elements of fraud.  Plaintiff's only argument is that Defendant did not meet the heightened pleading standard by not specifying the allegedly fraudulent statements and by not specifying the time or place where the representations were made.[64]  Defendant has adequately alleged fraud, in a manner sufficient to put Plaintiff on notice.  Defendant has specified that Plaintiff allegedly represented that he would personally oversee all aspects of construction.[65]

Like in *Sammons*, the complainant has identified the alleged fraudulent misrepresentations as occurring in the context of the contract negotiations.  Defendant implies, although he does not explicitly state, that these representations were made during the negotiation of the October 10, 2013 contract.[66]  Specifically, Defendant says that Mr. Rzayev "represented that he would personally oversee all aspects of construction.  Because of his commitment to personal supervision, Rzayev explained that he would charge a 1/3 management fee, far more than other contractors in the area."[67]  While Defendant could have made this passage more explicit, it is nonetheless sufficiently clear that (1) the specific allegedly fraudulent statement was that Mr. Rzayev would personally oversee all aspects of

---

[62] *Id*. at *4.  The court exercised its discretion to convert the motion to dismiss into a motion for summary judgment because the parties had already brought facts outside the complaint before the court during oral argument and briefing.  *Id*. at *5.

[63] *Universal Capital Mgmt.,* 2012 WL 1413598, at *4.

[64] Motion to Dismiss, Item 7, at 2.

[65] Answer and Counterclaim, Item 5, at *11.

[66] Answer and Counterclaim, Item 5, at *11.

[67] Answer and Counterclaim, Item 5, at *11.

construction; (2) the statement was made during the negotiation of the October 10, 2013 contract; and (3) the statement was allegedly made to induce Defendant to agree to the terms of the contract including the higher management fee. This level of detail is sufficient to put Plaintiff on notice of the alleged wrongful conduct.


## B. Count VI

Plaintiff is correct that corporate officers are not liable for their corporation's actions *merely* by virtue of their corporate positions.[68] But when a corporate officer directly participates in the tortious conduct, personal liability may be imposed, even when the officer is acting on behalf of the corporation.[69] Delaware courts have held that the officer's mere knowledge of tortious activity is not sufficient.[70] Individual liability attaches only where the officer "directed, ordered, ratified, approved, or consented to" the wrongful act.[71] In other words, corporate officers *are not derivatively liable* for the torts of the corporation; however, corporate officers *are directly liable* for the torts they personally commit, whether on behalf of the corporation or otherwise.

In *Brasby v. Morris*, defendant Leroy Morris, a natural person, was an employee, officer, agent, and director of the co-defendant company, a corporation that erects prefabricated and modular homes.[72] The plaintiff contracted with the company to have a home erected on his property. When the plaintiff discovered that no physical structure had been erected at the site, after Mr. Morris allegedly repeatedly assured him that progress was

---

[68] Motion to Dismiss, Item 7, at 3-4 (*citing Gassis v. Corkery*, 2014 WL 3565418, *5 (Del. Ch. July 21, 2014).
[69] *Heronemus,* 1997 WL 524127, at *4 (explaining that the personal participation doctrine assigns liability to corporate officers for torts that they "commit, participate in, or inspire, even though the acts are performed in the name of the corporation").
[70] *Id.* at *2.
[71] *Brasby*, 2007 WL 949485 at *8.
[72] *Id.*

13

being made, plaintiff filed suit against the corporation and against Mr. Morris individually, alleging breach of contract, negligence, and fraud.[73] Denying summary judgment, the court found that the plaintiff had "alleged facts sufficient to move forward with a claim of fraud against Leroy Morris individually" under the "personal participation doctrine" because plaintiff asserted that Mr. Morris personally "knowingly made false statements to Plaintiff[,] which Plaintiff in turn relied upon, to his detriment."[74]

Like in *Brasby*, Defendant has specifically alleged that the statements in question were made by Mr. Rzayev himself, meeting the requirement that the officer "directed, ordered, ratified, approved, or consented to" the wrongful act.[75] Defendant has alleged that Mr. Rzayev made affirmative representations, meeting the requirement that liability only be imposed for "misfeasance or active negligence" as opposed to "nonfeasance or the omission of an act which a person ought to do."[76] Further, whereas *Brasby* concerned a motion for summary judgment, we are at the motion to dismiss stage, which requires that the claim be allowed to stand so long as there is some conceivable set of facts that could be proven to support the claims asserted such that the claimant would be entitled to relief.[77] The Court finds that Defendants allegations have met this liberal standard.

---

[73] *Id.* at *2.
[74] *Id*. at *8.
[75] *Brasby*, 2007 WL 949485 at *8.
[76] *Heronemus*, 1997 WL 524127 at *2.
[77] *Clinton*, 977 A.2d at 895.

14

## VIII. Conclusion

Keeping in mind the high bar for 12(b)(6) dismissal and considering the allegations in the light most favorable to the party making the claim, Plaintiff's Motion to Dismiss Counts V and VI is **DENIED**.  This order is entered without prejudice for renewal of the claims made herein after discovery has been conducted.

**IT IS SO ORDERED.**

_____/s/_____
**M. JANE BRADY**
Superior Court Judge