# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| OPTIMISCORP, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM ATKINS, GREGORY SMITH, and JOHN WAITE,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 2020-0183-MTZ |

## MEMORANDUM OPINION

Date Submitted:  April 9, 2021
Date Decided:  July 15, 2021

Theodore A. Kittila, James G. McMillan, III, and William E. Green, HALLORAN FARKAS + KITTILA LLP, Wilmington, Delaware, *Attorneys for Plaintiff.*

Stephen B. Brauerman and Sarah T. Andrade, BAYARD, P.A., Wilmington, Delaware, *Attorneys for Defendants.*

**ZURN, Vice Chancellor.**

This opinion addresses defendants William Atkins, Gregory Smith, and John Waite's (collectively, "Defendants") alleged mishandling of an approximately $6.8 million derivative arbitration award (the "Award"), which they secured for plaintiff OptimisCorp ("Optimis" or the "Company") in October 2019.[1] The Award included a fee payment to Defendants' counsel based on the lodestar method, which was less than what counsel would have received pursuant to the thirty-percent contingency provision in their engagement agreement. Defendants escrowed the Award with intentions to pay their counsel additional fees, and to distribute the remainder to certain stockholders, including themselves but excluding their adversaries at Optimis.

Optimis filed suit, alleging Defendants breached their fiduciary duties to the Company and their fellow stockholders by failing to promptly turn over the Award to the Company, and were unjustly enriched by withholding the Award and taking other actions to benefit Defendants' affiliate entity at the Company's expense. Defendants moved to dismiss those claims pursuant to Court of Chancery Rule 12(b)(6) (the "Motion"),[2] and also sought a declaration of entitlement to attorneys'

---

[1] Docket Item ("D.I.") 73 ¶ 22 [hereinafter "Am. Compl."]. The Award is attached as Exhibit A to the Amended Complaint. *See* Am. Compl. Ex. A [hereinafter "Award"].

[2] *See* D.I. 76; D.I. 79.

1

fees (the "Fee Request").[3]  For the following reasons, the Motion and Fee Request are denied.

## I.  BACKGROUND[4]

Optimis has over one hundred stockholders, including Defendants and Optimis's former outside counsel, Alan Z. Sussman.[5]  Defendants are former directors of Optimis, and former board members and executives of Optimis's main operating unit, Rancho Physical Therapy, Inc. ("Rancho").  They are current principals of a direct competitor, All-Star Physical Therapy ("All-Star").  In the derivative action underlying this dispute, Defendants served as derivative plaintiffs prosecuting claims on the Company's behalf.

### A.  Defendants Represent Optimis In A Derivative Suit And Secure The Award For The Benefit Of The Company And Its Stockholders.

Defendants have been sparring with Optimis's CEO and Chairman, Alan Morelli, since 2012, when Defendants began efforts to remove Morelli from the board.[6]  On October 7, 2015, Defendants filed a derivative action against the sitting

---

[3] D.I. 21 ¶¶ 38–39, 50–57 [hereinafter "Countercl."].

[4] I draw the following facts from the Amended Complaint, as well as the documents attached to and integral to it.  *See, e.g.*, *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *2 (Del. Ch. Dec. 28, 2018); *In re Gardner Denver, Inc. S'holders Litig.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014).

[5] *See* D.I. 69 at 13–14.

[6] On October 20, 2012, Waite and his confederates purported to remove Morelli at a special board meeting, in what then-Chief Justice Strine later referred to as a "Pearl Harborlike"

2

Optimis board of directors and Sussman, in an action styled *Atkins, et al. v. Morelli, et al.*, C.A. No. 11581-VCZ (the "Delaware Derivative Action"). Defendants asserted claims against Sussman for legal malpractice and breach of fiduciary duties owed solely to Optimis. The malpractice claim was predicated on Sussman's legal advice as Optimis's outside counsel, which Waite solicited in connection with ousting Morelli.[7]

---

ambush. Am. Compl. ¶ 14; *OptimisCorp v. Waite*, 137 A.3d 970 (Del. 2016) (TABLE). Soon after, Morelli called for a special board meeting to take place on October 25, 2012, at which Morelli proposed that Optimis's board investigate the circumstances surrounding the October 20 meeting and his purported removal as Chairman and CEO.

Significant litigation followed. On November 1, 2012, Defendants filed two related lawsuits in California; those were dismissed and the Company received no benefit. In those proceedings, the Company ultimately paid the attorneys' fees that Defendants incurred, resulting in a loss of approximately $400,000.

And on November 2, 2012, Morelli and an entity he wholly owns commenced an action in the Court of Chancery pursuant to 8 *Del. C.* § 225 (the "225 Action") against Waite and the putative board members Waite purported to install at the improper October 20 Meeting. The Court issued a status quo order, keeping Morelli at the helm as CEO. While the status quo order was in effect, and without receiving requisite approvals, Defendants unilaterally extended their employment agreements with Rancho, committing Rancho to pay them an aggregated sum of $900,000 in compensation. Accordingly, on September 13, 2013, this Court held Waite in contempt of the status quo order, sanctioned him in the amount of $7,500, and voided Defendants' unauthorized extension of their Rancho employment agreements. The 225 Action settled on March 21, 2013. The stipulated final judgment required that Optimis pay all the legal expenses incurred in the 225 Action, including Defendants' attorneys' fees.

[7] Sussman advised Waite that Delaware law did not require that the Board give Morelli advance notice of Waite's impending motion to call for a vote to remove Morelli as Optimis's CEO and Chairman.

3

Sussman moved to dismiss the Delaware Derivative Action based on an arbitration provision in Optimis's engagement agreement with Sussman.[8] The parties stipulated to dismiss the complaint against Sussman without prejudice and agreed to proceed before JAMS, applying California law (the "Arbitration").[9] In that proceeding, the parties tasked the arbitrator with assessing Sussman's liability; the appropriate remedy in view of Sussman's misconduct; and Defendants' entitlement to attorneys' fees and costs.

On September 12, 2019, the arbitrator found Sussman liable to Optimis for legal malpractice and breach of fiduciary duties owed to Optimis.[10] Accordingly, the arbitrator issued the Award in favor of Defendants, derivatively on Optimis's behalf. The arbitrator made the Award "for the benefit of all Optimis shareholders" for "expenses incurred by Optimis" relating to the litigation fallout between the parties from October 2012 through the Award's issuance.[11] The arbitrator ordered Sussman to pay $5,278,222.95 in compensatory damages for expenses Optimis incurred, plus pre- and post-judgment interest, as well as $1,435,107.90 in attorneys' fees and $436,550.35 in costs.

---

[8] Am. Compl. ¶ 22.

[9] *See id.*; Award at 2. Optimis was not a party to the Arbitration.

[10] *See generally* Award.

[11] Am. Compl. ¶ 24; *see* Award at 2, 56, 78.

4

Bayard, P.A. ("Bayard") represented Defendants in the Arbitration from September 1, 2015 until March 14, 2019, when it withdrew. The October 5, 2015 Engagement Letter between Defendants and Bayard (the "Engagement Agreement") provides that Bayard is entitled

> to receive thirty percent (30%), net of expenses, of any gross recovery received by the [Defendants] or any common fund created by Bayard's efforts on behalf of the Clients, OptimisCorp., or its stockholders, in the form of a judgment, settlement, or other tangible or intangible reward arising out of or in any way relating to Bayard's efforts . . . .[12]

Under the Engagement Agreement, Defendants further agreed not to "oppose and specifically agree[d] that should Bayard succeed in this matter, Bayard may seek a success fee that exceeds this contingent payment amount."[13]

The parties agreed the arbitrator would consider Bayard's fee request. In the course of representing Defendants, Bayard devoted approximately 2,047 hours to the arbitration, which Sussman defended "aggressively" with the Company's assistance.[14] The arbitrator awarded attorneys' fees in the amount of $1,435,107.90. The arbitrator based that fee award on the lodestar method, "notwithstanding the clause in [Sussman's engagement and arbitration letter] that the prevailing party 'will be entitled to recover all attorneys' fees.'"[15] The arbitrator also found that

---

[12] Countercl. ¶ 38.

[13] *Id.*

[14] *Id.* ¶ 39.

[15] Award at 79.

"Claimants fail[ed] to establish that they are entitled to fees on top of damages against Sussman under the common fund theory."[16]

### B. Defendants Refuse To Release The Award To The Company And Exert Additional Pressure On The Company's Strained Finances.

When the Award was published in September 2019, Optimis was significantly short on operating capital and was preparing to raise capital through an equity sale. Optimis received notice of the Award and altered its financial forecasts and strategies in anticipation of receiving it. The Company then determined that it no longer needed to raise capital and dilute stockholders.

But Optimis did not receive the Award as anticipated. Throughout October, November, and December 2019, Optimis's counsel pressed for confirmation that the impending Award would be paid to Optimis. Defendants' counsel did not give such confirmation. On October 31, 2019, payment was made to Defendants' counsel, Bayard, in the amount of $8,675,794, in full satisfaction of the Award.[17] Defendants refused to turn over the Award to the Company.

Bayard also notified Optimis's counsel that it believed it was entitled to a total of $2,602,738.20 in attorneys' fees in view of the Engagement Agreement's

---

[16] *Id.*

[17] This amount comprises $5,278,222.95 in compensatory damages, pre- and post-judgment interest, and attorneys' fees in the amount of $1,435,107.90, and costs in the amount of $436,550.35.

contingency term, rather than the $1,435,107.90 that the arbitrator awarded and Bayard had already received.[18] Bayard sought, at a minimum, the difference between those amounts, and therefore informed Optimis that Defendants intended to distribute to Bayard from the Award $1,871,613.25 in attorneys' fees and costs.[19]

While the parties argued over the Award, on November 22, Defendants filed a levy against Rancho's accounts receivable funds, interfering with its business operations and Optimis's cash flow. As a result of the levy, Optimis alleged it was forced to rely on short-term loans on highly unfavorable terms. Optimis characterizes Defendants' actions in withholding the derivative Award and filing the levy as a "a one-two combination punch meant to cause the undoing of Optimis and Rancho—Defendants' (or All-Star's) chief competitor."[20] On March 12, 2020, a California state court lifted the levy as improper.

But as alleged, that relief came too late, as the levy cost the Company approximately $1.5 million in interest and fees. In addition, Defendants' simultaneous withholding of the Award allegedly caused Optimis to suffer further damages of $2.5 million, comprised of loss of market share, referral sources,

---

[18] See, e.g., Countercl. ¶ 53.

[19] See Am. Compl. ¶ 33; Am. Compl. Ex. B. Bayard has not specified the basis for this figure, which exceeds the difference between the amount sought and the amount paid, and which is not subdivided into fees and costs.

[20] Am. Compl. ¶ 45.

patients, payors, goodwill, and revenue. And Optimis alleges that All-Star capitalized on Optimis's weakness "to lure its patients and employees away from Optimis's owned and managed entities."[21]

### C.   Optimis Seeks Recourse In This Court.

Optimis's efforts to obtain the derivative Award from Defendants were to no avail. And so on January 6, 2020, Optimis filed a Motion for Entry of an Order to Show Cause in the Delaware Derivative Action. The Court heard the motion, at which time Bayard represented it was acting pursuant to client instructions to hold the Award in its IOLTA account and to refrain from releasing the proceeds to Optimis. I ruled the Company did not utilize the correct procedural tool to obtain the relief sought, and suggested a formal Court of Chancery Rule 7(a) pleading would be required to obtain the desired relief.

Accordingly, on March 10, Optimis filed this action, seeking declaratory and injunctive relief to force Defendants to turn the Award over to the Company.[22] Count I requested a declaratory judgment that the Award is derivative and should be turned over to the Company. Counts II and III brought claims for breach of fiduciary

---

[21] *Id.* ¶ 49.

[22] *See* D.I. 1.

8

duty and unjust enrichment. I bifurcated the proceedings and directed the parties to address Count I first.[23]

On April 2, Defendants answered the Complaint and filed Verified Counterclaims, seeking (1) in Count I, a declaratory judgment and injunctive relief that the Award be turned over to Defendants, and (2) in Count II, a declaratory judgment as to the Fee Request. Specifically, Defendants reasoned that because the Engagement Letter's thirty-percent contingency would entitle Bayard to $2,602,738.20 and because Bayard already had received $1,435,107.90 in attorneys' fees, Bayard should receive at least an additional $1,167,630.30 in attorneys' fees, subject to an upward adjustment if the Court determines Bayard is entitled to a success fee (the "Additional Fees").[24]

The parties then cross-moved for judgment on the pleadings on their declaratory judgment claims.[25] Optimis sought a declaration that the Award is derivative, and that the Award minus the arbitrator's attorneys' fee award should be turned over to Optimis. Defendants sought a declaration that the Award be distributed on a *pro rata* basis to themselves and Optimis stockholders other than Sussman, his confederates including Morelli, and any entities they own or control in

---

[23] *See* D.I. 18; D.I. 29.

[24] *See* Countercl. ¶¶ 53, 54.

[25] *See* D.I. 23; D.I. 32; D.I. 34; D.I. 40.

whole or in part.[26] Defendants sought this distribution in view of their disputes with Morelli, Optimis's CEO and largest stockholder; they seek to withhold the Award from him and his affiliates as wrongdoers. Defendants also sought the Additional Fees.

On June 18, via a bench ruling after argument, I rejected Defendants' position and determined that the Award is derivative, is based on a purely derivative claim, and must be paid directly to Optimis—not distributed *pro rata* to Defendants' identified subset of individual shareholders.[27] Accordingly, I granted Optimis's motion for partial judgment on the pleadings and denied Defendants' cross-motion.[28] I reserved judgment on the Fee Request. Defendants thereafter turned over to the Company "the balance of the Award (approximately $5.2 million), together with the interest accrued from the interest-bearing account into which the Award was deposited."[29]

The parties then turned to Optimis's pending claims for breach of fiduciary duty and unjust enrichment. On June 29, Defendants moved to dismiss Counts II

---

[26] *See* Countercl. ¶ 49 (requesting a declaration that the Award be distributed pro rata to Optimis stockholders "other than the Individual Defendants and Sussman, and any entities owned or controlled in whole or in part by any of the Individual Defendants or Sussman").

[27] *See* D.I. 69.

[28] *See* D.I. 45; D.I. 46.

[29] *See* D.I. 49.

and III.[30]  In response, on September 11, Optimis filed the Verified Amended Complaint in this action (the "Amended Complaint").[31]  Counts II and III of the Amended Complaint alleged, respectively, that (1) Defendants, as stockholder representatives prosecuting derivative claims on the Company's behalf, breached their fiduciary duties to the Company and their fellow stockholders by failing to promptly turn the Award over to the Company; and that (2) Defendants were unjustly enriched by possessing and leveraging an asset that was secured "for the benefit of all Optimis shareholders."[32]

On September 25, Defendants filed the Motion to dismiss Counts II and III pursuant to Court of Chancery Rule 12(b)(6) (the "Motion").[33]  The parties briefed the Motion,[34] and after argument on April 9, 2021, I took the Motion under advisement.[35]

## II.    ANALYSIS

The standards governing a motion to dismiss under Rule 12(b)(6) for failure to state a claim for relief are well settled:

---

[30] *See* D.I. 50.

[31] *See generally* Am. Compl.

[32] *Id.* ¶ 61 (quoting Award at 78).

[33] *See* D.I. 76.

[34] *See* D.I. 79; D.I. 82; D.I. 85.

[35] *See* D.I. 89.

11

(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible to proof."[36]

Thus, the touchstone "to survive a motion to dismiss is reasonable 'conceivability.'"[37] This standard is "minimal"[38] and plaintiff-friendly.[39] "Indeed, it may, as a factual matter, ultimately prove impossible for the plaintiff to prove his claims at a later stage of a proceeding, but that is not the test to survive a motion to dismiss."[40] Despite this forgiving standard, the Court need not accept conclusory allegations unsupported by specific facts or draw unreasonable inferences in favor of the nonmoving party.[41] "Moreover, the court is not required to accept every strained interpretation of the allegations proposed by the plaintiff."[42]

---

[36] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (quoting *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del. 1982)).

[37] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[38] *Id.* at 536.

[39] *See, e.g.*, *Clouser v. Doherty*, 175 A.3d 86 (Del. 2017) (TABLE); *In re USG Corp. S'holder Litig.*, 2021 WL 930620, at *3–4 (Del. Ch. Mar. 11, 2021); *In re Trados Inc. S'holder Litig.*, 2009 WL 2225958, at *8 (Del. Ch. July 24, 2009).

[40] *Cent. Mortg. Co.*, 27 A.3d at 536.

[41] *See, e.g.*, *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

[42] *Trados Inc.*, 2009 WL 2225958, at *4 (internal quotation marks omitted) (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).

### A.  Plaintiff Has Stated A Claim For Breach Of Fiduciary Duty.

It is well-settled that "[a] claim for breach of fiduciary duty requires proof of two elements:  (1) that a fiduciary duty existed and (2) that the defendant breached that duty." [43]   Count II alleges that "[b]y virtue of their role as stockholder representatives in bringing a derivative action for the benefit of Optimis, Defendants are fiduciaries for all other stockholders and Optimis," owing to them duties of care and loyalty "concerning the derivative claims pursued by them on behalf of the Company and the handling of the derivative proceeds received by them."[44]  Optimis alleges Defendants breached that duty by

> (a) failing to promptly release the derivative proceeds to Optimis;
> (b) failing to seek judicial guidance regarding the payment of the derivative proceeds; (c) failing to hold the derivative proceeds in an interest-bearing account during the pendency of the dispute with Optimis; (d) seeking to extract personal benefits for themselves to the exclusion of other stockholders of Optimis; [and] (e) inflicting economic injuries on Optimis . . . .[45]

Defendants attack Count II on multiple grounds.  First, Defendants press that any fiduciary role and duties they assumed as derivative plaintiffs prosecuting the Arbitration was with respect to their fellow stockholders only, not to the corporation itself.  Second, Defendants argue that "[e]ven if Defendants owed fiduciary duties

---

[43] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).

[44] Am. Compl. ¶ 57.

[45] *Id.* ¶ 58.

to Plaintiff, Delaware law does not impose upon them any obligation other than to maintain the derivative action for the benefit of the stockholders," and therefore Plaintiff has not pled breach as a matter of law.[46] Finally, Defendants argue that Plaintiff's claim still must fail because Delaware law does not recognize a claim for money damages for a derivative plaintiff's breach of fiduciary duty.[47] Defendants are wrong under Delaware law.

### 1. Defendants, As Derivative Plaintiffs, Owed Optimis And All Its Shareholders Fiduciary Duties.

"The authority of a corporate board to litigate claims on behalf of a corporation is derived from Section 141(a) of the DGCL," and "the board entity remains empowered under [Section] 141(a) to make decisions regarding corporate litigation."[48] "Delaware law considers the control exercised by a corporate board over litigation as command of a corporate asset."[49]

But the board may, and sometimes must, relinquish control over that asset to a stockholder representative in a derivative action. A derivative action is "prosecuted in the name of the corporation itself,"[50] but permits a stockholder "to

---

[46] *See* D.I. 79 at 16–17.

[47] *See id.* at 21.

[48] *In re Oracle Corp. Deriv. Litig.*, 2019 WL 6522297, at *15 (Del. Ch. Dec. 4, 2019) (quoting *Zapata Corp. v. Maldonado*, 430 A.2d 779, 786 (Del. 1981)).

[49] *Id.*

[50] *Cole v. Wilm. Mat'ls, Inc.*, 1993 WL 257415, at *2 (Del. Ch. July 1, 1993).

take control of the litigation asset and attempt to employ it on behalf of the corporation."[51] A derivative plaintiff permitted to proceed on the corporate behalf has been entrusted with controlling a corporate asset that derives value "primarily from the risk-adjusted recovery sought by the plaintiff."[52]

As recognized by the United States Supreme Court, fiduciary principles govern when considering the corporation writ large and when considering the derivative suit:

> Directors and managers, if not technically trustees, occupy positions of a fiduciary nature . . . . Likewise, a stockholder who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary character. He sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion.[53]

---

[51] *Oracle*, 2019 WL 6522297, at *15 (quoting *Park Emps.' & Ret. Bd. Emps.' Annuity & Benefit Fund of Chi. v. Smith*, 2016 WL 3223395, at *1 (Del. Ch. May 31, 2016), *aff'd*, 175 A.3d 621 (Del. 2017)).

[52] *Id.* *16.

[53] *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949); *see also Ross v. Bernhard*, 396 U.S. 531, 532 & 538–39 (1970) (stating that "[w]e have noted that the derivative suit has dual aspects: first, the stockholder's right to sue *on behalf of the corporation*, historically an equitable matter; second, the claim of the corporation against directors or third parties on which, if the corporation had sued and the claim presented legal issues, the company could demand a jury trial," and holding that "the right to jury trial attaches to those issues in derivative actions as to which the corporation, if it had been suing in its own right, would have been entitled to a jury" (emphasis added)).

Delaware law also recognizes that the derivative plaintiff acts as a corporate fiduciary with respect to the cause of action.[54] When a derivative plaintiff is selected, she is assessed under Court of Chancery Rule 23.1 for her fitness to serve as a fiduciary.[55] "As a derivative plaintiff, the Lead Plaintiff serves in a fiduciary capacity as representative of persons whose interests are in its hands and the redress of whose injuries is dependent upon her diligence, wisdom and integrity."[56] Those "persons" include the derivative plaintiffs' fellow stockholders, as well as the corporation itself, because the derivative plaintiff prosecutes a suit "in his or her

---

[54] *See, e.g.*, *Crothall v. Zimmerman*, 94 A.3d 733, 735 (Del. 2014) (noting that a derivative plaintiff "undertake[s]" a "fiduciary status); *Steinhardt v. Howard-Anderson*, 2012 WL 29340, at *8 (Del. Ch. Jan. 6, 2012) ("When a stockholder of a Delaware corporation files suit as a representative plaintiff for a class of similarly situated stockholders, the plaintiff voluntarily assumes the role of fiduciary for the class."); *In re S. Peru Copper Corp. S'holder Deriv. Litig.*, 52 A.3d 761, 767 n.5 (Del. Ch. 2011) (stating that the "derivative plaintiff 'must be qualified to serve in a fiduciary capacity as a representative of the class of stockholders, whose interest is dependent upon the representative's adequate and fair prosecution of the action'" (quoting *Emerald P'rs v. Berlin*, 564 A.2d 670, 673 (Del. Ch. 1989))), *aff'd sub nom. Ams. Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012); *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 2006 WL 903578, at *2 (Del. Ch. Apr. 3, 2006) ("Now, having comported themselves in a manner that fully justifies [counsel]'s motion for withdrawal, the plaintiffs, who are all corporate entities purporting to serve as derivative plaintiffs (*i.e ., as fiduciaries*), must find successor counsel or this action cannot continue." (emphasis added)).

[55] *See, e.g.*, *La. Mun. Police Emps.' Ret. Sys. v. Pyott*, 46 A.3d 313, 335–36 (Del. Ch. 2012), *rev'd on other grounds*, 74 A.3d 612 (Del. 2013). Relatedly, the Court assesses fee awards for the derivative plaintiff by considering if she conferred some benefit on the corporation for which she has prosecuted a claim. *See, e.g.*, *Bird v. Lida, Inc.*, 681 A.2d 399, 404 (Del. Ch. 1996).

[56] *Oracle*, 2019 WL 6522297, at *17 (alteration and internal quotation marks omitted) (quoting *South v. Baker*, 62 A.3d 1, 21 (Del. Ch. 2012)); *accord In re Fuqua Indus., Inc. S'holder Litig.*, 752 A.2d 126, 129 (Del. Ch. 1999).

capacity as self-designated fiduciary for the corporation."[57] Recently, in *In re Oracle Corp. Derivative Litigation*, this Court recognized that "[t]he corporate asset, the cause of action" was vested with the plaintiff "on the corporate behalf."[58] Considering the scope of privilege, the Court concluded that documents relied on by the special committee that appointed the derivative plaintiff "pertain to the asset and must be available to the derivative Plaintiff *as fiduciary for the corporation*."[59]

Defendants' position that they owed no duty to the Company as derivative plaintiffs is inconsistent with Delaware law. Defendants owed fiduciary duties to the Company and its stockholders with respect to the corporate asset entrusted to them: the derivative claim they prosecuted in the Arbitration, which ultimately resulted in the derivative Award belonging to Optimis. Defendants' disdain for Morelli and Sussman does not obviate their duties to them as stockholders, or to the other stockholders, or to Optimis: a derivative plaintiff cannot "erroneously equate control of the corporation by directors and officers who are antagonistic to the

---

[57] *Cole*, 1993 WL 257415, at *1; *see also Lacos Land Co. v. Arden Gp., Inc.*, 1986 WL 14525, at *4 (Del. Ch. Dec. 24, 1986) (acknowledging that "a class representative[]" owes a "duty of loyalty to the corporation on whose behalf a derivative action is brought, [and] its shareholders as a class"); *Imperial Corp. of Am. v. Shields*, 1997 WL 808628, at *12 n.19 (S.D. Cal. Aug. 20, 1997) ("While the Court accepts that these authorities stand for the unexceptionable proposition that a named plaintiff must adequately represent the interests of the class, it is not a necessary corollary that such a plaintiff has no duty to the corporation on behalf of which the suit is brought.").

[58] *Oracle*, 2019 WL 6522297, at *1.

[59] *Id.* (emphasis added).

shareholder plaintiffs with an absence of duty to the corporation on the part of the shareholder plaintiffs."[60]

### 2. Optimis Has Alleged Defendants Breached Their Fiduciary Duties.

Based on Optimis's allegations, Defendants breached the duties they owed. "As a fiduciary, the representative plaintiff owes to those whose cause he advocates a duty of the finest loyalty."[61] "Any stockholder seeking to bring a derivative suit on behalf of the corporation has to act in the best interest of the corporation."[62] "[I]n undertaking to assert rights of others," a representative plaintiff "assumes an obligation to such persons to act with respect to the claims asserted loyally and not to seek or to obtain a private benefit by reason of the power resulting from such

---

[60] *Shields*, 1997 WL 808628, at *12 n.19 ("[D]uty to the corporation and antagonism to its controlling officers and directors are not inconsistent. For example, where 'the stockholder and those who manage the corporation are completely and irrevocably opposed on a matter of corporate practice and policy,' it may be improper to align the corporation with the plaintiff even though the plaintiff is seeking to enforce a right belonging to the corporation." (quoting *Smith v. Sperling*, 354 U.S. 91, 94, 97 (1957), and citing *Smith*, 354 U.S. at 97 n.3 ("The ultimate interest of the corporation made defendant may be the same as that of the stockholder made plaintiff, but the corporation may be under a control antagonistic to him, and made to act in a way detrimental to his rights.")")).

[61] *Steinhardt*, 2012 WL 29340, at *8 (internal quotation marks omitted) (quoting *Barbieri v. Swing-N-Slide Corp.*, 1996 WL 255907, at *5 (Del. Ch. May 7, 1996)).

[62] *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 961–62 (Del. Ch. 2013) (citing *Ruggiero v. Am. Bioculture, Inc.*, 56 F.R.D. 93, 95 (S.D.N.Y.1972) ("[I]t is difficult to see how the . . . plaintiffs can reconcile their existing duties to [the company] and its present shareholders as derivative plaintiffs with the duties which they seek to assume on behalf of a class which attacks [the company].")).

representative status."[63]  "What is forbidden to such a person is that he exercise any power *conferred upon him by reason of his representative capacity* for his personal benefit at the expense of the class members (the corporation and its shareholders in a derivative case).  Specifically, that means a class representative may not trade any aspect of the claims asserted derivatively for a strictly personal benefit."[64]  Nor can he "profit[] as a fiduciary to the expense, or to the prejudice of," the Company and its stockholders.[65]  The focus is on whether "the plaintiff has proceeded in a manner designed to benefit the plaintiff individually—rather than the class as a whole," and "whether the plaintiff took steps to benefit other stockholders or the entity."[66]  "However, while a fiduciary must act with complete loyalty, self-sacrifice of legitimate personal interests is ordinarily not required."[67]

Here, Optimis alleges Defendants breached their duty of loyalty by withholding the Award out of animus toward Morelli and the Company, and to benefit themselves.  The Amended Complaint specifically alleges that Defendants

---

[63] *Lacos Land Co.*, 1986 WL 14525, at *3 (citing *Wied v. Valhi, Inc.*, 466 A.2d 9 (Del. 1983)).

[64] *Id.* at *4 (citations omitted) (emphasis in original) (citing *Young v. Higbee*, 324 U.S. 594, 598–99 (1945), and *Wied*, 466 A.2d at 15).

[65] *Wied*, 466 A.2d at 16 (citing *Cohen*, 337 U.S. at 549–50).

[66] *In re Orchard Enters., Inc. S'holder Litig.*, 2014 WL 4181912, at *12 (Del. Ch. Aug. 22, 2014).

[67] *Lacos Land Co.*, 1986 WL 14525, at *5 (citing *Jedwab v. MGM Grand Hotels, Inc.*, 509 A.2d 584 (Del. Ch. 1986)).

withheld the Award to enrich "a select constituency of stockholders made up of themselves and others of their choosing" at the expense of Optimis and other stockholders.[68] Rather than turning the Award over to the Company, Defendants withheld it, explaining they intended to distribute it to themselves and other stockholders they selected on a *pro rata* basis to prevent any benefit from inuring to Sussman, Morelli, or their affiliates. Defendants allegedly allowed their personal perceptions of Optimis's leadership to dictate the fate of the Award, at least until I ordered that the corporate asset be released to Optimis. Optimis's factual allegations support this theory, given the long and arduous history between Defendants and Morelli and their open intention to exclude him and others they perceived as wrongdoers from the Award.

Defendants were entrusted with a corporate asset—the derivative claim—and that claim as transmogrified into a satisfied judgment must be returned to the corporation.[69] Where a derivative plaintiff is permitted to proceed on the corporate behalf, the plaintiff has been entrusted with controlling a cause of action that belongs

---

[68] Am. Compl. ¶ 42.

[69] In *In re El Paso Pipeline Partners Derivative Litigation*, 132 A.3d 67 (Del. Ch. 2015), the Court of Chancery catalogued the circumstances in which the Court will permit a derivative award to be distributed *pro rata* to stockholders, rather than placed in corporate custody. *See id.* at 122–29. On the parties' cross-motions for judgment on the pleadings as to their declaratory judgment counts, Defendants argued that those circumstances were present here. I rejected that argument, *see* D.I. 69, and my conclusion applies with equal force today.

to the corporation and derives value "primarily from the risk-adjusted recovery sought by the plaintiff."[70] "Because a derivative suit is being brought on behalf of the corporation, the recovery, if any, must go to the corporation."[71] When the corporate asset transformed from a claim or cause of action, which Defendants controlled, into a final and binding judgment in favor of the Company, the Company regained control. Defendants had monetized the asset as they were assigned to do. Thereafter, the Award, which was specifically characterized as derivative, belonged to Optimis, and the Optimis board should have regained its power under Section 141(a) to make decisions regarding the use of the benefits derived from corporate litigation.[72]

Defendants argue they sought to distribute the Award to a subset of stockholders rather than the Company to benefit certain fellow stockholders and keep monies away from alleged wrongdoers. This argument glosses over the fundamental principle that the Award's distribution was not Defendants' decision to make, as the suit was brought for Optimis's benefit.[73] As Defendants have

---

[70] *Oracle*, 2019 WL 6522297, at *16.

[71] *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004).

[72] *See Levien v. Sinclair Oil Corp.*, 1975 WL 1952, at *3–4 (Del. Ch. Aug. 12, 1975); *Oracle*, 2019 WL 6522297, at *15.

[73] *See Levien*, 1975 WL 1952, at *4.

acknowledged,[74] "[i]t is certainly true that the recovery in a derivative action generally goes to the entity."[75] Absent extreme circumstances, it is not for the derivative plaintiff or this Court to decide that an alleged wrongdoer should not benefit indirectly from the company's receipt of a derivative award, as "in the case of an ongoing corporation, the Court has no way of knowing what would be best under the circumstances."[76] "[T]o award direct payment of their aliquot share to . . . shareholders is tantamount to the declaration of a dividend by the Court, thus

---

[74] *See* D.I. 32 at 29 ("These cases do nothing more than regurgitate the general rule of derivative recovery, which is also recognized in *El Paso*. Defendants acknowledge the general rule, but have determined that this case presents one of the situations where the general rule 'is not absolute' and an investor-level recovery is appropriate." (citations omitted)).

[75] *El Paso*, 132 A.3d at 120; *cf. id.* at 122 ("The rule requiring the corporation to sue and receive the recovery must always yield to the requirements of equity, and is cast aside in view of the fact that the stockholders are the real beneficiaries whenever the usual course is not open." (quotation omitted)); *id.* at 122–23 ("Because the derivative action is fundamentally an equitable proceeding, the court has the power to craft a remedy that is appropriate based on the specific facts and equities of the case. For a corporate claim, that most often means a corporate remedy, but not always."); *see also, e.g.*, *Ala. By-Prods. Corp. v. Cede & Co. ex rel. Shearson Lehman Bros., Inc.*, 657 A.2d 254, 265 (Del. 1995) ("Because the shareholders sue in a representative capacity only, any damages recovered in the derivative suit inure directly to the corporation."); *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006) ("[T]he harm resulting from the overpayment was to JPMC. Therefore, any damages recovery would flow only to JPMC, not to the shareholder class."); *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1264 (Del. 2016) ("As to the second prong of *Tooley*, the benefit of any recovery must flow solely to the Partnership. The Court of Chancery recognized that 'returning the full amount [of the overpayment] to the entity' was the 'most obvious' remedy, and that Brinckerhoff sought to recover damages 'on behalf of' the Partnership. Were Brinckerhoff to recover directly for the alleged decrease in the value of the Partnership's assets, the damages would be proportionate to his ownership interest. The necessity of a *pro rata* recovery to remedy the alleged harm indicates that his claim is derivative.").

[76] *Levien*, 1975 WL 1952, at *4.

usurping the function and business judgment of the board of directors."[77] "The wisdom of forbidding such a Court-ordered distribution of corporate income seems amply demonstrated here,"[78] where Optimis is a going concern with over one hundred stockholders.

By placing their personal beliefs above the interest and will of Optimis, the Award's beneficial owner, and by stripping Optimis's board of the ability to dictate the proper use of the corporate asset, Defendants thereby harmed, or at least prejudiced, the Company. In anticipation of receiving the Award, Optimis altered its financial forecasts and strategies and abandoned its plans to raise capital through an equity sale in anticipation of receiving the Award; and upon withholding the Award, Optimis was forced to rely on short-term loans with unfavorable terms. Optimis has alleged an actionable breach.

Next, Defendants argue that "Delaware law does not permit a breach of fiduciary duty claim to proceed against a derivative representative plaintiff"; "[n]o Delaware Court has ever permitted a claim to proceed, let alone awarded monetary damages, against such representative plaintiff for breach of his fiduciary duties"; and

---

[77] *Id.* at \*3 (citing *Keenan v. Eshleman*, 2 A.2d 904 (Del. 1938)); *see also Cutler v. Taylor*, C.A. No. 11437-VCMR, at 4–5 (Del. Ch. Mar. 29, 2019) (TRANSCRIPT) (rejecting proposed settlement of derivative action that provided for payment "directly to certain equityholders" where the company had "significant creditors" and such payment "may well be deemed a fraudulent conveyance, which the Court can't be a part of").

[78] *Levien*, 1975 WL 1952, at \*4.

"the only remedy for any such fiduciary breach is disqualification."[79]  But as Defendants concede, this Court has considered a derivative plaintiff's alleged breach of fiduciary duty in other contexts.[80]  That this Court has not addressed the fact pattern here is not dispositive.  Rather, the absence of similar cases in my review of the applicable law demonstrates, as Optimis points out, that this fact pattern is extraordinary.  While Defendants contend that allowing this action to go forward would "disincentivize stockholder representatives from pursuing this kind of derivative litigation,"[81] I disagree.  Instead, it would disincentivize the kind of misconduct alleged here:  the improper withholding of a derivative award for personal reasons and without regard for the authority of corporate decisionmakers.

Finally, Defendants argue that Count II is barred because Optimis's request for damages is not adequately pled and is not recognized by Delaware law.  I disagree.  Optimis seeks "damages in an amount to be determined at trial, but not less than $1,500,000 plus pre- and post-judgment interest,"[82] and "[s]uch other and

---

[79] D.I. 79 at 21–22.

[80] *See, e.g.*, *Steinhardt*, 2012 WL 29340, at *10–11 (concluding a class representative was disqualified for trading stocks upon the basis of information obtained through the litigation in breach of fiduciary duty to fellow class members); *Wied*, 466 A.2d at 15 (considering on appeal the Court of Chancery's denial of a constructive trust in the face of allegations that a derivative plaintiff breached their fiduciary duties to the class by acting as a "faithless fiduciary" and "depart[ing] the litigation with the profit from a private settlement [he] negotiated and entered into while serving as the representative plaintiff").

[81] D.I. 79 at 22.

[82] Am. Compl. ¶ 59.

further relief as this Court deems just and appropriate."[83] Optimis is not required to plead and prove damages in order to state a claim for breach of fiduciary duty,[84] but has nonetheless done so by alleging that withholding the Award caused Optimis to take out unfavorable loans costing the Company approximately $1,500,000. These damages are distinct and separate from those sought as to Count III.[85]

Further, although this Court has remedied derivative plaintiffs' breaches of fiduciary duty with disqualification, that is not the sole remedy. As Optimis points out, the Court has fashioned a remedy "tailored to the wrongful conduct."[86] This is consistent with this Court's "broad discretion to craft an appropriate remedy for a fiduciary violation." [87] Whether Optimis is entitled to damages or another appropriate remedy must be assessed with the benefit of discovery. Accordingly, Defendants' Motion is denied as to Count II.

---

[83] *Id.* ¶ (B)(3).

[84] *Carlton Invs. v. TLC Beatrice Int'l Hldgs., Inc.*, 1996 WL 189435, at *4 (Del. Ch. Apr. 16, 1996) ("[T]he allegations sufficiently state a claim for breach of fiduciary duty because Carlton has no obligation to plead and prove injury as part of such a claim.").

[85] *Compare* Am. Compl. ¶ 59 (seeking approximately $1.5 million), *with id.* ¶ 65 (seeking approximately $6.8 million).

[86] *Steinhardt*, 2012 WL 29340, at *12.

[87] *E.g., Berger v. Pubco Corp.*, 976 A.2d 132, 139 (Del. 2009); *McGovern v. Gen. Hldg., Inc.*, 2006 WL 1468850, at *24 (Del. Ch. May 18, 2006) ("The Supreme Court has emphasized the capacious remedial discretion of this court to address inequity.").

## B. Plaintiff Has Stated A Claim For Unjust Enrichment.

Count III alleges that "[b]y withholding the derivative proceeds from Optimis, Defendants unjustly enriched themselves with ill-gotten benefits to the detriment of Optimis, while also causing other direct and indirect harm to Optimis on a significant scale."[88] Under Delaware law, "[u]njust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[89] To state a claim for unjust enrichment "a plaintiff must prove:  '(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.'"[90] Here, Optimis has pled a claim for unjust enrichment.

Count III builds on Defendants' improper withholding of the Award, and alleges Defendants exacerbated the pain of the missing funds via the levy and marketplace competition against Rancho in its weakened state. Optimis alleges that "Defendants benefitted from depriving Optimis of the Award in that Optimis was

---

[88] Am. Compl. ¶ 64.

[89] *Palese v. Del. State Lottery Office*, 2006 WL 1875915, at *5 (Del. Ch. June 29, 2006) (quoting *ID Biomedical Corp., v. Tm Techs., Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995)), *aff'd*, 913 A.2d 570 (Del. 2006).

[90] *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009) (quoting *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393–94 (Del. Ch. 1999)).

not able to fully participate in the physical therapy marketplace as it was undercapitalized due to the withholding of the Award, a corporate asset of Optimis."[91] Optimis alleges that Defendants had a long and litigious history with Morelli and the Company; participated in a competing business; and levied Rancho's accounts in the same timeframe as the Award. As alleged, Defendants' animus toward the Company, as an extension of Morelli, motivated Defendants' improper withholding of the Award.

Taking these allegations as true, it is reasonably conceivable that Defendants put Optimis in a bleak financial situation by withholding the Award, then put the final squeeze on the Company by levying its accounts in order to capitalize in a competitive market. This theory may be attenuated, and may be tested through discovery, but it is not conclusory. At the pleading stage, these allegations of enrichment are sufficient to support Count III.[92]

Relatedly, Optimis has alleged that it was impoverished by Defendants' actions. Optimis alleges it suffered losses because of Defendants' withholding of the Award in tandem with levying Rancho's accounts, which maimed Optimis's

---

[91] Am. Compl. ¶ 64.

[92] Defendants also argue that they were not enriched because they "are not All-Star" and because Optimis does not, or cannot, participate in the physical therapy marketplace. D.I. 79 at 29. These arguments fail, as Optimis alleges that (1) Defendants are "principals" of All-Star and acted to benefit that entity, and (2) Optimis profits from Rancho's participation in the physical therapy marketplace. *See* Am. Compl. ¶¶ 9, 64. I must accept these allegations as true at the pleading stage.

"main operating unit."[93]  By hobbling Rancho when the Company was tight on cash and missing the Award, Defendants enabled All-Star to take business and profits from Rancho.  Optimis alleges that it suffered approximately $2.5 million in damages.  Thus, Optimis has alleged an enrichment to Defendants and related impoverishment to Optimis, thereby satisfying the first three elements of the claim. Again, while Defendants may be correct that this theory is "questionable,"[94] the strength of Optimis's theory must be tested through discovery.

Optimis has also alleged that Defendants' actions are without justification. With respect to the withholding of the Award, Defendants argue that their actions were justified because they "were attempting to protect Optimis'[s] innocent stockholders."[95]  But in their purported attempt to protect those stockholders, Defendants breached their fiduciary duties.  Defendants also argue that their actions were justified because they "were acting in reliance upon a reasonable interpretation of the Award."[96]  This argument cannot undermine Optimis's allegations at this stage, as the Award was explicitly characterized as derivative.  And with respect to the levy, a California court lifted the levy as improper.  Optimis has alleged facts

---

[93] Am. Compl. ¶ 9.

[94] D.I. 79 at 31.

[95] *Id.* at 28.

[96] *Id.* at 33; *see also id.* at 28 (arguing that Defendants were not enriched and their actions were justified because they were "acting in reliance of [*sic*] a reasonable interpretation of the Award").

giving rise to a reasonable inference that Defendants' enriching actions were unjustified.

As to the fifth element, Defendants argue that Optimis has a remedy in its claim for breach of fiduciary duty, and that Count III must be dismissed because it is duplicative of Count II. Breach of fiduciary duty and unjust enrichment claims can survive together.[97] And here, as alleged, Count III builds on, and is separate and distinct from, Count II. The bases for Optimis's unjust enrichment claim are "separate or distinct from the alleged breach of fiduciary duty."[98] The breach giving rise to Count II is the improper withholding of the Award. The enriching action giving rise to Count III is the levy and competition, on top of the pain of the withheld Award.

The counts also seek distinct remedies. Unlike Count II which seeks damages, Count III requests, among other things, restitution and an accounting for Defendants' unjust enrichment. And Optimis has alleged sufficient facts at the pleading stage to

---

[97] *See Reith v. Lichtenstein*, 2019 WL 2714065, at *21 (Del. Ch. June 28, 2019); *MCG Cap. Corp. v. Maginn*, 2010 WL 1782271, at *25 n.147 (Del. Ch. May 5, 2010) ("In this case, then, for all practical purposes, the claims for breach of fiduciary duty and unjust enrichment are redundant. One can imagine, however, factual circumstances in which the proofs for a breach of fiduciary duty claim and an unjust enrichment claim are not identical, so there is no bar to bringing both claims against a director.").

[98] *Calma v. Templeton*, 114 A.3d 563, 592 (Del. Ch. 2015) (viewing unjust enrichment as duplicative of breach of fiduciary duty claim where plaintiff alleged no "unjust enrichment separate or distinct from the alleged breach of fiduciary duty" and concluding that because party adequately pled breach of fiduciary duty it was reasonably conceivable the plaintiff could recover for unjust enrichment).

support that it is entitled to such relief.[99]  Thus, while Optimis may "receive, at most, one recovery," "at least at this procedural juncture, [it] may simultaneously assert a claim for breach of fiduciary duty and a claim for unjust enrichment."[100]  The Motion is denied as to Count III.

**C.**  **Bayard Is Not Entitled To Additional Fees From The Award, And The Pending Fee Request Is Denied.**

I now turn to Defendants' pending Fee Request for Bayard's Additional Fees. That request was presented as a motion for judgment on the pleadings as to Count II of Defendants' Counterclaim, and accordingly, I consider the Fee Request through the lens of Court of Chancery Rule 12(c).  On a motion for judgment on the pleadings, "a trial court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party."[101]  "A party is entitled to judgment on the pleadings when, accepting the well pleaded facts

---

[99] *See Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1063 (Del. 1988) ("Restitution may require not only the restoration of the property to its rightful owner but also compensation or reimbursement for the benefits enjoyed by the defendant through the use or possession of plaintiff's property regardless of whether or not the defendant is classified as a wrongdoer."); *id.* ("An accounting for profits is a means of measuring the benefits bestowed on an unjustly enriched defendant.  Accordingly, an unjustly enriched defendant may be ordered to turn over to the plaintiff the profits earned through the use or possession of the plaintiff's property.").

[100] *Frank v. Elgamal*, 2012 WL 1096090, at *11 (Del. Ch. Mar. 30, 2012).

[101] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

admitted in the Answer to be true, there is no material fact in dispute and the moving party is entitled to judgment under the law."[102]

Defendants ask this Court to determine whether Bayard is entitled to Additional Fees, as contemplated in the Engagement Agreement, from the Award monies. Defendants contend that Bayard is entitled to a contingent fee of at least $2,602,738.20, representing the thirty percent minimum of the common fund contemplated by the Engagement Agreement, and press that an even more lucrative award of thirty-five percent is appropriate here.[103] Because Bayard has already been paid $1,435,107.90, Bayard seeks from Optimis $1,167,630.30 in Additional Fees out of Optimis' common fund recovery. But the arbitrator, empowered by the arbitration provision in Sussman's engagement letter and Defendants' stipulation to her jurisdiction to decide attorneys' fees, already awarded Bayard's fees for its derivative work against Sussman. Delaware law affords the arbitrator's decision great deference and mandates that I deny the Fee Request.

In the Arbitration, Defendants sought attorneys' fees "on two grounds—the common fund theory and as prevailing party under the Engagement and Arbitration

---

[102] *Warner Commc'ns, Inc. v. Chris-Craft Indus.*, 583 A.2d 962, 965 (Del. Ch.), *aff'd*, 567 A.2d 419 (Del. 1989).

[103] *See* Countercl. ¶¶ 40, 41; *see also* Countercl. Ex. 5 (stating Bayard is "to receive thirty percent (30%), net of expenses, of any gross recovery received by the [Defendants] *or any common fund created* by Bayard's efforts on behalf of the Clients, OptimisCorp., or its stockholders, in the form of a judgment, settlement, or other tangible or intangible reward arising out of or in any way relating to Bayard's efforts" (emphasis added)).

Agreement."[104] Under that agreement's prevailing party provision, the arbitrator determined Defendants were "entitled to attorneys' fees as a prevailing party under the lodestar method—that is, the number of attorney hours multiplied by the attorneys' hourly rates."[105] Accordingly, the arbitrator concluded that $775,734 in fees was "reasonable and necessary."[106]

As to the common fund theory, the arbitrator recognized that "fees under the common fund are awarded *from* the common fund itself, not on top of it or against the opposing party."[107] The arbitrator considered the Engagement Agreement and its terms, acknowledging that Defendants' "counsel took on this matter on a contingency."[108] The Award stated, "Even in their engagement agreement with the Bayard Firm, [Defendants] only agreed to compensate their attorneys by allowing them thirty percent 'of' any gross recovery received or any common fund created."[109] The arbitrator found that Defendants "fail[ed] to establish that they are entitled to fees on top of damages against Sussman under the common fund theory."[110]

---

[104] Award at 78.

[105] *Id.* at 79.

[106] *Id.* at 80.

[107] *Id.* at 78 (emphasis in original).

[108] *Id.* at 82.

[109] *Id.* at 78–79.

[110] *Id.* at 79.

Instead, the arbitrator concluded Bayard was best compensated by applying a multiplier to the prevailing party fees under the lodestar method. She relied on the Engagement Agreement, concluding that "[w]hile this contractual term may not create an entitlement to common fund recovery," "it shows that the parties believed that counsel's billing rates did not already compensate for their contingency risk."[111] To compensate Bayard for this risk, the arbitrator applied a multiplier of 1.85 to the $775,734 lodestar amount, resulting in an award of $1,435,107.90.[112]

Having paid Bayard the arbitrator's fee award, Defendants come to this Court asking for the Additional Fees out of the common fund, even though the arbitrator rejected Bayard's request for those fees. The arbitrator addressed and decided common fund entitlement, and her analysis is outcome determinative on the Fee Request. Defendants do not seek vacatur of the arbitrator's decision as to attorneys' fees, nor do they argue it exceeded her authority or was manifestly incorrect; they simply ask this Court for more fees on top of what she awarded, citing the same Engagement Agreement she already considered. Delaware law leaves no room for such a request.

---

[111] *Id.* at 82.

[112] *Id.* at 83.

33

"The Court of Chancery lacks subject matter jurisdiction to adjudicate disputes that the parties have contractually agreed to arbitrate."[113]  "[T]here is a presumption that the arbitrat[or] acted within the scope of its authority, and this presumption may not be rebutted by an ambiguity in a written opinion."[114] "Arbitration awards . . . are not lightly disturbed, and Courts must accord substantial deference to the decisions of arbitrators."[115]  "In fact, a court's review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence," and "[w]hen an arbitration award rationally can be derived from either the agreement of the parties or the parties' submission to the arbitrator, it will be enforced."[116]  This Court "does not sit as an appellate court reviewing the arbitrators' legal findings and procedural actions.  Indeed, parties

---

[113] *360 Campaign Consulting, LLC v. Diversity Commc'n, LLC*, 2020 WL 1320909, at *2 (Del. Ch. Mar. 20, 2020).

[114] *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 732 (Del. Ch. 2008) (internal quotation marks omitted) (quoting *Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d 68, 70 (1st Cir. 2008)).

[115] *Id.* (internal quotation marks omitted) (quoting *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 580 (3d Cir. 2005)).

[116] *Id.* at 732–33 (alterations and internal quotation marks omitted) (quoting *Way Bakery v. Truck Drivers, Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004), and then quoting *Brennan v. CIGNA Corp.*, 2008 WL 2441049, at *4 (3d Cir. June 18, 2008)).

electing to arbitrate generally waive their right to judicial review of the case's substantive merits."[117]

Applying these principles in *World-Win Marketing, Inc. v. Ganley Management Co.*, Chancellor Chandler refused to review and vacate an arbitrator's determination as to attorneys' fees.[118] To succeed on such a claim, the Court recognized that the movant "must show by strong and convincing evidence that the Arbitrator clearly exceeded his authority," which "is defined by "the mutual assent of the parties to the terms of the submission."[119] "Even if the arbitrator did not state the grounds for a grant or denial of relief, the grant or denial of relief will be deemed to be within the scope of the arbitrator's authority if grounds for the award can be inferred from the facts of the case."[120]

Here, Defendants do not even attempt to disturb the arbitrator's decision; they simply ask for more from this Court. Bayard's fees are capped by the Award's terms. Bayard is not entitled to Additional Fees from the Award as a common fund, and is

---

[117] *World-Win Mktg., Inc. v. Ganley Mgmt. Co.*, 2009 WL 2534874, at *2 (Del. Ch. Aug. 18, 2009) (footnote and internal quotation marks omitted) (quoting *Kuhn v. Hess*, 2000 WL 1336780, at *1 (Del. Ch. Aug. 16, 2000) (ORDER)).

[118] *Id.* (quoting *Malekzadeh v. Wyshock*, 611 A.2d 18, 21 (Del. Ch. 1992)).

[119] *Id.* (quoting *Fagnani v. Integrity Fin. Corp.*, 167 A.2d 67, 73–74 (Del. Super. 1960)).

[120] *Id.* (alteration and internal quotation marks omitted) (quoting *Malekzadeh*, 611 A.2d at 22).

wholly compensated by the arbitrator's $1,435,107.90 fee award. Defendants' request for Additional Fees is denied.

## III. CONCLUSION

Defendants' Motion and Fee Request are **DENIED**. The parties shall submit an implementing order within ten days of this decision.